No. 23,954.

THE STATE OF KANSAS, *Appellee,* v. HARRY T. BREEN, *Appellant.*

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Syndicalism and Sabotage—Insufficient Information.* An information undertaking to charge the defendant with violation of the statute relating to criminal syndicalism and sabotage, and with counseling, aiding and abetting violations of the statute, considered, and held insufficient to authorize the district court to place the defendant on trial.

Appeal from Trego district court; ISAAC T. PURCELL, judge. Opinion filed March 11, 1922. Reversed.

*Harold O. Mulks,* of Chicago, Ill., for the appellant.
*Richard J. Hopkins,* attorney-general, and *John R. Parsons,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was charged in three counts of the information with violation of the statute relating to criminal syndicalism and sabotage, and in the fourth count with aiding and abetting teaching and advocacy of criminal syndicalism and sabo-

tage. He was convicted on the second, third, and fourth counts, and appeals. The principal error asigned is that the court denied a motion to quash the information.

The statute is framed according to the following scheme. Section one defines criminal syndicalism. Section two defines sabotage. Section three denounces felonies of four general classes:

1. Advocating, affirmatively suggesting, or teaching the duty, necessity, propriety, or expediency of criminal syndicalism or sabotage.

2. Printing, publishing, circulating,. etc., books, pamphlets, etc., containing matter advocating, etc., criminal syndicalism or sabotage.

3. Attempting to justify sabotage or criminal syndicalism, with intent to exemplify, spread, teach, etc.

4. Organizing, helping to organize, becoming a member of, or voluntarily assembling with any society or assemblage which teaches, advocates, etc., criminal syndicalism or sabotage.

Section four provides for punishment of any owner, lessee, etc., of any building, room, etc., who knowingly permits therein any assembly or consort of persons prohibited by section three.

The first count of the information charged the defendant with becoming a member of a society which had for its object and purpose the doing of unlawful acts as means of effecting industrial and political revolution. The defendant was acquitted of this charge.

The second count charged that the defendant unlawfully and feloniously advocated and affirmatively suggested unlawful acts as a means of accomplishing an industrial and political revolution. The nature of the supposed advocacy and suggestion, whether by word of mouth, by writing, or by other means, was not stated. The substance of the communication was not stated. The defendant insists that words used by way of advocacy, teaching, or suggestion, should be set out with verbal accuracy. This is not necessary, but the content of the propagation should be fairly indicated. The nature of the unlawful acts advocated and suggested was not stated. The result is, the defendant was not informed of the nature and cause of the accusation against him, as the constitution requires (Bill of Rights, § 10, Gen. Stat. 1915, § 114), and the information did not contain a statement of·the facts constituting the offense with the directness and certainty required by the code of criminal procedure (Gen. Stat. 1915, §§ 8017, 8018).

The third count of the information charged that, in the county

of Trego and state of Kansas, on the 8th day of July, 1920, the defendant and three' other named persons did "unlawfully and feloniously assemble with an assemblage of persons, which assemblage had for its purpose and object the teaching, advocating, and affirmatively suggesting the doctrine of criminal syndicalism."

The portion of the statute under which the third count was drawn reads as follows:

"Any person who, . . . organizes, or helps to organize, or become[s] a member of, or voluntarily assembles with, any society or assemblage of persons which teaches, advocates or affirmatively suggests the doctrine of criminal syndicalism, sabotage, or the necessity, propriety or expediency of doing any act of physical violence or the commission of any crime or unlawful act as a means of accomplishing or ·effecting any industrial or political ends, change or revolution or for profit, is guilty of a felony, . . ." (Laws 1920, ch. 37, § 3.)

It will be observed that statute speaks of any society or assemblage "which teaches, advocates," etc. It does not speak of an assemblage "to teach, to advocate," etc., and does not speak of an assemblage of "persons who advocate," etc. Teaching, advocating, etc., had been treated earlier in the statutory scheme, and this portion of the statute undertook to deal with organization of and membership in societies, and the holding of their meetings.

Perhaps the meaning of the statute may be made clearer by applying it to a well-known organization to which the defendant belonged. The Industrial Workers of the World is a society organized under a constitution and governed by by-laws. Its affairs are directed by a general executive board, chosen at an annual convention, which is the supreme legislative body. This society advocates and teaches criminal syndicalism and sabotage. It grants charters to local societies, called local unions. These unions are required to hold at least one regular meeting each month, and they exist to propagate criminal syndicalism and sabotage. A person who desires to become a member of the Industrial Workers of the World, may become a member at large when there is no local union in his vicinity. The restriction on organizing and becoming a member of such a society will necessarily lead to less formal gatherings of defenders of the faith than union meetings. These consortings, analagous to and substantially taking the place of regular meetings, the legislature designated as assemblages. Under the statute, voluntarily assembling with a society or assemblage is made a felony. Having attributes which classify them as men, members of

the Industrial Workers of the World may gratify their social instincts by associating with their fellows, singly or in groups, without fear of the law; but whenever a number of them convene in some species of society meeting, however informal, the assembling becomes unlawful. Delegates and organizers are sent out from the general headquarters of the Industrial Workers of the World, to teach and advocate the doctrines of the society, distribute literature, solicit members, initiate new members, and otherwise further what the organization, regards as its interests. Suppose an organizer should address a miscellaneous street gathering of such people as stopped to hear him. He would be guilty of teaching and advocating criminal syndicalism and sabotage, but he would not be guilty of assembling with an assemblage which, teaches criminal syn-. dicalism and sabotage. Let it be assumed the defendant and the persons charged jointly with him were delegates and organizers sent from general headquarters to Trego county in July, 1920, to execute their agencies among workers in the harvest fields. The fact that they were seen together in Wa Keeney, or were seen with a group of other members of the society, would not make them guilty of assembling with an assemblage which teaches and advocates criminal syndicalism and sabotage. In other words, the court is not able to discover in the statute a declaration to the effect that, if three or more or five or more persons who advocate and teach criminal syndicalism and sabotage, shall voluntarily come together at the same place at the same time, each one shall be guilty of a felony.

The court does not know what the county attorney had in mind when he drew the third count of the information. If he had followed the language of the statute, and had charged that the defendant did then and there unlawfully, feloniously and voluntarily assemble with an assemblage of persons which teaches, etc., he would have stated a case of unlawful assembling. Instead of that, he charged that the defendants assembled with an assemblage of persons, which assemblage had for its purpose and object the teaching, etc. It may be inferred from statements made in the course of the trial that he regarded any coming together, or any working in the same vicinity, of members of the Industrial Workers of the World, as unlawfully assembling. The word "assemblage" means not only a collection of persons, but also the act of coming together; and the intention doubtless was to charge that the defendants assembled

with an assemblage of persons, which assemblage—that is, act of
assembling—had for its purpose and object the teaching, etc. The
count is susceptible of but one other interpretation: The defend-
ants assembled with an assemblage, which assemblage [then and
there] had for its purpose and object the teaching, etc. While teach-
ing was to characterize the meeting in Trego county in July, 1920,
if it lasted long enough, the meeting was not a meeting of an or-
ganization characterized by its teaching. In either case, the third
count of the information failed to state a public offense.

The substance of the fourth count was this: A society calling
itself "Industrial Workers of the World," and its agents, were en-
gaged in teaching, advocating, and affirmatively suggesting, in
Trego county, the things enumerated in the definitions of criminal
syndicalism and sabotage. The defendant counseled, aided and
abetted the agents of the society in such teaching, etc. One of the
agents was the defendant himself, who was in Trego county. An-
other agent was Fred Bishop, who lived, or had an office, at 1001
West Madison street, Chicago, Ill., and who was engaged in "send-
ing out literature to the agents of said society." There is no alle-
gation that the society or its agents engaged in teaching, advocat-
ing, etc., by means of circulating, distributing, etc., books, pamphlets,
or other written or printed matter, and there is no specification of
any other means by which the teaching, etc., was accomplished.
There is no description of the "literature" sent from Chicago, identi-
fying it with any of the classes interdicted by the statute, and it
is impossible to discover from the information, what criminal acts
the defendant counseled, aided and abetted. Therefore, the motion
to quash the fourth count should have been allowed.

In a preceding paragraph reference was made to following the
language of the statute. In preparing an information under this
statute, which was designed to meet a peculiar kind of propaganda,
and which stops just short of trespassing on constitutional guaran-
ties, it is not safe to take liberties with phraseology. While a
charge in the words of the first subdivision of section three would
not be sufficient, as was indicated in the discussion of the second
count, still, the words of the statute ought to be used, and the
necessary specifications added. In the third count, the word "vol-
untarily" was omitted. It may be the omission would not have
been fatal if the count had been otherwise sufficient. Perhaps the
words "unlawfully and feloniously" would have indicated the de-

fendant acted of his own free will. However this may be, it is a good rule not to leave out of a pleading words which the legislature deemed important in definition of a crime. The use of the word "literature" in the fourth count astonishes. In but one count of this information was the legislature's choice of words observed, although the case was one demanding the utmost care in pleading.

The organization, "Industrial Workers of the World," maintains a press, which publishes newspapers and periodicals in English and in many foreign languages. It also maintains a publishing bureau, which publishes books, pamphlets, leaflets, and other literature, including songbooks. Here are two songs which reveal some of the social aims and the spiritual enlightenment of Industrial Workers of the World. One of them is of special interest to those engaged in and dependent on this state's basic industry—farming— and the other is of interest to all Christian people:

### HARVEST WAR SONG.

By PAT BRENNAN.

(Tune: "Tipperary.")

We are coming home, John Farmer; we are coming back to stay.
For nigh on fifty years or more, we've gathered up your hay.
We have slept out in your hayfields, we have heard your morning shout;
We've heard you wondering, where in hell's them pesky go-abouts?

CHORUS.

It's a long way, now understand me; it's a long way to town;
It's a long way across the prairie, and to hell with Farmer John.
Up goes machine or wages, and the hours must come down;
For we're out for a winter's stake this summer, and we want no scabs around.

You've paid the going wages, that's what kept us on the bum,
You say you've done your duty, you chin-whiskered son of a gun.
We have sent your kids to college, but still you must rave and shout,
And call us tramps and hoboes, and pesky go-abouts.

But now the wintry breezes are a-shaking our poor frames,
And the long drawn days of hunger, try to drive us boes insane.
It is driving us to action—we are organized to-day;
Us pesky tramps and hoboes, are coming back to stay.

## CHRISTIANS AT WAR.

### By John F. Kendrick.

(Tune: "Onward, Christian Soldiers.")

Onward, Christian soldiers! Duty's way is plain:
Slay your Christian neighbors, or by them be slain.
Pulpiteers are spouting effervescent swill,
God above is calling you to rob and rape and kill,
All your acts are sanctified by the Lamb on high;
If you love the Holy Ghost, go murder, pray, and die.

Onward, Christian soldiers, rip and tear and smite!
Let the gentle Jesus, bless your dynamite.
Splinter skulls with shrapnel, fertilize the sod;
Folks who do not speak your tongue, deserve the curse of God.
Smash the doors of every home, pretty maidens seize;
Use your might and sacred right to treat them as you please.

Onward, Christian soldiers! Eat and drink your fill;
Rob with bloody fingers, Christ O. K.'s the bill.
Steal the farmer's savings, take their grain and meat;
Even though the children starve, the Saviour's bums must eat.
Burn the peasant's cottages, orphans leave bereft;
In Jehovah's holy name, wreak ruin right and left.

Onward, Christian soldiers! Drench the land with gore;
Mercy is a weakness all the gods abhor.
Bayonet the babies, jab the mothers, too;
Hoist the cross of Calvary to hallow all you do.
File your bullets' noses flat, poison every well;
God decrees your enemies must all go plumb to hell.

Onward, Christian soldiers! Blighting all you meet,
Trampling human freedom under pious feet.
Praise the Lord whose dollar sign dupes his favored race!
Make the foreign trash respect your bullion brand of grace.
Trust in mock salvation, serve as pirates' tools;
History will say of you: "That pack of G—— d—— fools."

The defendant's credential as a delegate for all industrial unions of the Industrial Workers of the World, was introduced in evidence. He could not, however, be placed on trial, according to law, on an information some counts of which failed to comply with constitutional and statutory requirements, and other counts of which failed to state any offense against the laws of the state of Kansas.

The judgment of the district court is reversed, and the cause is remanded with direction to quash the information.