No. 24,405.

THE STATE OF KANSAS, *ex rel.* RICHARD J. HOPKINS, as Attorney-general, *Appellee,* v. THE INDUSTRIAL WORKERS OF THE WORLD et al., *Appellants.*

##### SYLLABUS BY THE COURT.

INJUNCTION—*Restraining Criminal Syndicalism and Sabotage.* The petition in an action to restrain the Industrial Workers of the World, its executive board, and its officers, agents, and members, from committing in Kansas depredations against property by criminal syndicalism and sabotage, as defined by chapter 37 of the Laws of 1920, considered, and held to state a cause of action as against objection that a court of equity has no power to enforce a criminal statute by injunctive order, and other objections.

Appeal from Butler district court; ALLISON T. AYERS, judge. Opinion filed April 7, 1923. Affirmed.

*Harold O. Mulks,* of Chicago, Ill., *Caroline Lowe,* of Boston, Mass., and *H. S. Julian, of* Kansas City, Mo., for the appellants.

*Charles B. Griffith,* attorney-general, *Dennis Madden, John G. Egan,* assistant attorneys-general, and *R. T. McCluggage,* county attorney, for the appellee; *C. A. Matson,* of Wichita, of counsel.

The opinion of the court was delivered by

BURCH, J.: The action was one to restrain commission in Kansas of depredations against property, inimical to the general welfare, by the Industrial Workers of the World, its executive board, and its officers, agents, and members. A demurrer to the petition, filed by Henry Bradley, a member of the executive board, was overruled, and he appeals.

The petition described the organization and management of the Industrial Workers of the World, and of certain branches under the names "Agricultural Workers Industrial Union No. 400," "Agricultural Workers Organization of the I. W. W. No. 400," "Oil Workers Industrial Union No. 450" and "O. W. I. U. No. 450." The petition also described the purposes, and the methods of accomplishing the purposes, of the organization. Certain of these methods were denounced as felonious by chapter 37 of the Laws of 1920. This statute was analyzed in the opinion in the case of *The State v. Breen,* 110 Kan. 817, 205 Pac. 632.

The action was commenced on June 24, 1920, and it was alleged that within a few weeks of the filing of the petition, large numbers

of the defendants had come into the state of Kansas, and had conspired and confederated together to carry out the purposes of the organization, and had conspired and confederated together to stop work in the wheat fields and oil fields of Kansas, by criminal syndicalism and sabotage as defined in the statute. The petition also contained the following allegations:

"That if the purposes of said defendants are accomplished, the public health and the lives of the people of the state of Kansas will be endangered, production will be decreased, and a great amount of personal and real property owned by residents and citizens of the state of Kansas, and by the state of Kansas and municipalities in said state, will be maliciously and wilfully destroyed or injured by said defendants, for the purpose of carrying out the plans of their organization, and that each and all of said defendants are insolvent.

"That the plaintiff, the state of Kansas, is without adequate remedy at law to prevent the defendants from carrying out said conspiracy and from doing said unlawful acts, unless this honorable court shall by injunction restrain the defendants from carrying into effect the unlawful conspiracy and doing said unlawful acts in pursuance thereof, heretofore set forth in this petition."

Kansas ranks fourth among the states of the Union in the production of petroleum. The yearly value usually exceeds the value of gold produced in the entire United States, including Alaska. In the year in which the action was commenced, the value was one hundred and fifteen million dollars. Kansas produces more wheat than any other state in the Union, and from one-sixth to one-fifth of all the wheat raised in the United States. The total production for the five-year period ending with 1921 was 591,000,000 bushels, North Dakota ranking second with 364,000,000 bushels. In the year 1920 Kansas produced 140,842,000 bushels of wheat. These statistics are given to show why misguided and miscreant members of the Industrial Workers of the World, with a member of the general executive board among them, swarmed into Kansas just before the wheat harvest of 1920. If successful in their efforts, they could paralyze two essential industries, not only of the state, but of the nation, while the country was still suffering from the effects of the disastrous strikes of 1919 and 1920. The action was one to enjoin them from execution of their nefarious design.

The argument in support of the demurrer to the petition consists of variations upon the theme, a court of equity has no power to enforce a criminal statute by injunctive order. It is said: a court of equity has no jurisdiction in matters of crime; equity can deal

with none but property rights; no property rights of the state of Kansas were threatened; the proceeding was an attempt to inflict involuntary servitude on members of the order; and the proceeding was violative of constitutional rights of the defendants' under both state and federal statutes.

The theme and its variations were considered at length in the opinion in the case of *The State, ex rel., v. Howat,* 109 Kan. 376, 198 Pac. 686. The action had nothing whatever to do with administration of the criminal law and, on the authority of the decision in the Howat case, the court holds the petition stated a cause of action as against all the objections urged.

Certain defendants appeal from a ruling refusing to quash service of summons on them. The ruling is not now reviewable. (*Clingman v. Hill,* 104 Kan. 145, 178 Pac. 243.)

The judgment of the district court is affirmed.

HOPKINS, J., not sitting.