[Crim. No. 2658.   In Bank.—June 20, 1924.]

## In the Matter of the Application of R. WOOD for Writ of Habeas Corpus.

[1] EQUITY—JURISDICTION—EXTENT OF.—While jurisdiction in equity is primarily concerned with the protection of civil property rights in those cases wherein the law has failed to provide an adequate remedy, it is not, and never has been, strictly limited to this field.

[2] ID. — PUBLIC NUISANCE — INJUNCTION — JURISDICTION — CRIMES.— The power and jurisdiction of equity to enjoin the maintenance of a public nuisance have always been recognized, even where the same was abatable by indictment or information and where the maintenance thereof constituted a statutory crime.

[3] INJUNCTION—CRIMES—PROPERTY RIGHTS—EQUITY — JURISDICTION. It is true, as a general rule, that an injunction will not be granted to restrain an act merely criminal, where no property rights are endangered thereby, but where property rights are endangered, the

2.  Right to enjoin act which is both nuisance and crime, notes, 13 Ann. Cas. 794; Ann. Cas. 1914A, 440; Ann. Cas. 1916C, 455; Ann. Cas. 1916D, 788.

Validity of legislation directed against social or industrial propaganda deemed to be of a dangerous tendency, note, 1 A. L. R. 336.

fact that the acts are criminal will not prevent a court of equity from exercising its jurisdiction, it being, however, not in all cases essential that the property rights so endangered be private property rights of the party plaintiff.

[4] ID.—PUBLIC NUISANCE—STATE—PROPERTY RIGHTS.—"As a public nuisance concerns the public generally, it is the duty of the government to take measures to abate or enjoin it. Hence it follows that the government can obtain an injunction to restrain a public nuisance without showing any property right in itself. The duty of protecting the property rights of all its citizens is sufficient to warrant issuing the injunction."

[5] ID.—EQUITY—ENJOINING ACTS PROSCRIBED BY CRIMINAL SYNDICALISM ACT—EFFECT UPON ACT.—An injunction issued out of a court of equity forbidding substantially the precise acts which are denounced as crimes by the provisions of the Criminal Syndicalism Act (Stats. 1919, c. 188), does not supersede said act; it rather supplements the act. The act remains in full force and effect, in no way modified, qualified, limited, or superseded by the injunction.

[6] ID.—BURGLARY.—It does not at all follow that if equity may properly enjoin the acts denounced by the Criminal Syndicalism Act, that it may also enjoin the commission of burglary.

[7] ID.—PUBLIC POLICY—NUISANCES—PROPERTY RIGHTS—CRIMES.—An injunction may issue to restrain the commission of acts which are violative of public policy, which create a nuisance or assail the rights of property, although such acts are specific crimes and punishable as such.

[8] ID.—REMEDIES—PROPERTY RIGHTS—CRIMINAL SYNDICALISM ACT.—The Criminal Syndicalism Act itself, together with the enforcement thereof by the criminal courts, does not afford a complete and adequate remedy for protection to the property of citizens.

[9] ID.—MEMBERSHIP IN AND DELEGATE OF I. W. W.—VIOLATION OF INJUNCTION—EQUITY.—An injunction issued by a court of equity forbidding substantially the precise acts which are denounced as crimes by the Criminal Syndicalism Act, as applied to one charged with knowingly violating the injunction by being a member and delegate of the Industrial Workers of the World, involves a legitimate and proper exercise of equitable jurisdiction and is not void.

[10] COURTS—DECISIONS.—If the reasoning and conclusion of an overruled decision are valid, though based upon the false premise of an invalid law, then if such reasoning and conclusion be based upon the sound premise of a valid law, the result is a perfectly sound structure.

[11] INJUNCTION—CRIMINAL SYNDICALISM ACT—LEGISLATURE.—The issuance of an injunction by a court of equity forbidding substan-

tially the precise acts which are denounced as crimes by the Criminal Syndicalism Act did not constitute an interference with the province of the legislature, since the injunction made no new law; neither did it supersede, repeal, or modify any existing law. It operated solely to aid in the better enforcement of the law which had been theretofore enacted by the legislature.

[12] Id.—Libelous Publication — Property Rights — Equity.—Conceding the validity of the rule that an injunction will not issue to restrain a publication solely upon the ground of the libelous character thereof, nevertheless such rule is subject to the limitation that where the proposed publication threatens irreparable injury to rights of property and the other grounds of equitable jurisdiction exist, a court of equity will not hesitate to restrain such publication, regardless of its character as libelous or otherwise.

[13] Contempt—Pleading—Affidavits—Jurisdiction.—In a proceeding involving a constructive contempt, the affidavits upon which the citation is issued constitute the complaint, and unless they contain a statement of facts which show that a contempt has been committed, the court is without jurisdiction to proceed in the matter.

[14] Injunction — Criminal Syndicalism Act — Pleading — Affidavits.—Where affidavits, charging a person with contempt for knowingly violating an injunction forbidding substantially the acts denounced by the Criminal Syndicalism Act, state that such person "had been active in the County of Sacramento and elsewhere throughout the state of California in obtaining persons to become members of said organization," such statement is equivalent to charging that said person assisted in organizing, extending, and increasing said organization.

[15] Criminal Law—Pleading—Habeas Corpus.—If an indictment or information purports and attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into upon *habeas corpus* after judgment of conviction.

[16] Habeas Corpus—Certiorari—Appeal.—In no event can the writ of *habeas corpus* be made to serve the purpose of a writ of error or an appeal.

[17] Injunction — Knowledge of Existence of — Contempt — Affidavits—Sufficiency of.—Affidavits charging a person with contempt for a violation of an injunction enjoining acts denounced by the Criminal Syndicalism Act sufficiently alleged that such person knew of the injunction at the time he was charged with violating it by the averment, "That during all of said times said . . . (person) was and is a member of said Industrial Workers of the

World, and all of his said acts aforesaid were done by him . . . with full knowledge on the part of said . . . (person) of the issuance and existence of said order of injunction."

(1) 21 C. J., pp. 154, 155, secs. 135, 136. (2) 29 Cyc., pp. 1219, 1221. (3) 32 C. J., pp. 276, 277, 279, secs. 438, 440, 442. (4) 29 Cyc., p. 1244. (5) 32 C. J., p. 278, sec. 440. (6) 32 C. J., p. 276, sec. 438. (7) 32 C. J., p. 279, sec. 442; 29 Cyc., p. 1221. (8) 32 C. J., p. 278, sec. 441 (1926 Anno.). (9) 32 C. J., p. 278, sec. 441 (1926 Anno.). (10) 15 C. J., p. 961, sec. 358 (1926 Anno.). (11) 12 C. J., p. 885, sec. 387 (1926 Anno.). (12) 32 C. J., pp. 272, 273, sec. 432 (1926 Anno.). (13) 13 C. J., p. 64, sec. 88. (14) 32 C. J., p. 505, sec. 883. (15) 29 C. J., p. 42, sec. 34. (16) 29 C. J., p. 25, sec. 19. (17) 32 C. J., p. 505, sec. 883.

PROCEEDING in Habeas Corpus to secure release from custody on a charge of contempt of court for violation of an injunction. Writ discharged and prisoner remanded.

The facts are stated in the opinion of the court.

R. W. Henderson and L. B. Schlingheyde for Petitioner.

J. M. Friedlander, City Prosecutor, W. V. Cowan and U. S. Webb, Attorney-General, for Respondent.

MYERS, C. J.—The petitioner is in the custody of the sheriff in the county of Sacramento by virtue of an order made by the superior court of that county adjudging him in contempt of court, imposing a fine, and providing, in default of payment, for imprisonment at the rate of one day for each two dollars of the fine. The conduct which was charged as a contempt was the alleged violation of an injunction *pendente lite* issued out of that court in an action wherein the state of California, on the relation of the attorney-general, was plaintiff and the Industrial Workers of the World et al. were defendants. The injunction commanded the defendants, and each of them, their servants, agents, solicitors, attorneys, and all others acting in their aid or assistance, to "desist and refrain from further conspiring with each other to carry out, and from carrying out, or attempting to carry out, their conspiracy to injure, destroy and damage property in the state of California, and to take over and assume possession of the

industries and properties in said state as well as the government thereof; and from knowingly circulating, selling, distributing, and displaying books, pamphlets, papers or other written or printed matter advocating, teaching or suggesting criminal syndicalism, sabotage or the destruction of property for the purpose of taking over the industries and properties of all employers, or otherwise, and from advocating, by word of mouth or writing the necessity, propriety and expediency of criminal syndicalism or sabotage, direct action, willful damage or injury to physical property and bodily injury to person or persons, and justifying or attempting to justify criminal syndicalism, the commission or attempt to commit crime, sabotage, violence or unlawful methods of terrorism with the intent to approve, advocate or further the doctrine of criminal syndicalism, as said terms 'Criminal Syndicalism' and 'Sabotage' are defined in Chapter 188 of the Statutes and Amendments to the Code of the State of California, for 1919, and from organizing or aiding or assisting to organize or extend or increase any society, assemblage or association of persons which teaches, advocates, aids and abets criminal syndicalism or the duty, necessity or propriety of committing crime, sabotage, violence or any unlawful method of terrorism as a means of accomplishing a change in industrial ownership or control, or effecting any political change, and from doing any acts to carry out the doctrines, theories and acts of criminal syndicalism and from in any manner whatsoever conspiring or confederating together for the carrying out of said purposes, or either thereof, . . . '' The petitioner was arrested, charged with being a member and delegate of the Industrial Workers of the World, was served with a citation to show cause upon affidavits charging him with having knowingly violated the injunction and order of the court, and appeared in response to the citation upon the return day thereof, when a hearing was had thereon. He was found guilty of the acts charged in the affidavits, adjudged in contempt of court, and in default of the payment of the fine imposed was committed to the custody of the sheriff. It is petitioner's contention that his imprisonment is illegal, upon the grounds, first, that the injunction is invalid and that petitioner, therefore, cannot be held for disobedience

thereof, and, secondly, that the affidavits upon which the citation was issued are insufficient.

In support of petitioner's contention that the injunction herein is void he asserts that a court of equity has no criminal jurisdiction and cannot enjoin the commission of a crime, that the issuance of the injunction herein was an infringement of the province of the legislature, and that a court of equity will not and cannot enjoin a publication.

It is to be noted that the acts forbidden by the terms of the injunction here in question are, substantially speaking, the precise acts which are denounced as crimes by the provisions of the Criminal Syndicalism Act. (Stats. 1919, p. 281, c. 188.) Petitioner's contention in this behalf, speaking broadly, is that jurisdiction in equity is and has always been limited strictly to the civil side of jurisprudence; that this jurisdiction exists and may be invoked solely for the protection of private property rights; that the enforcement of criminal statutes is and has always been beyond the scope of equity jurisdiction; that the sole purpose and effect of the injunction here in question is to take away from one charged with the commission of these particular crimes his constitutional right to a trial by jury, and that the injunction is therefore void as being wholly in excess of the jurisdiction of the court which issued it.

[1] It is doubtless true that jurisdiction in equity is primarily concerned with the protection of civil property rights in those cases wherein the law has failed to provide an adequate remedy. But it is not and never has been strictly limited to this field. As far back as the reign of Henry I it was recognized that the select council (predecessors of the chancellor) would act "on all applications to obtain redress for injuries and acts of oppression wherever from the heinousness of the offense or the rank and power of the offender, or any other cause, it was probable that a fair trial in the ordinary courts would be impeded, and also wherever by force and violence the regular administration of justice was hindered." (1 Pomeroy's Equity Jurisprudence, 4th ed., pp. 35, 36.) [2] The power and jurisdiction of equity to enjoin the maintenance of a public nuisance have always been recognized, even where the same was abatable by indictment or information and where the maintenance thereof constituted a statutory crime.

[3] It is true, as a general rule, that an injunction will not be granted to restrain an act *merely criminal*, where no property rights are endangered thereby, but where property rights are endangered, the fact that the acts are criminal will not prevent a court of equity from exercising its jurisdiction. (*Pierce* v. *Stablemen's Union*, 156 Cal. 70–73 [103 Pac. 324].) It is not in all cases essential that the property rights so endangered be private property rights of the party plaintiff. [4] "As a public nuisance concerns the public generally, it is the duty of the government to take measures to abate or enjoin it. Hence it follows that the government can obtain an injunction to restrain a public nuisance without showing any property right in itself. The duty of protecting the property rights of all its citizens is sufficient to warrant issuing the injunction." (5 Pomeroy's Equity Jurisprudence, 4th ed., p. 4296; see, also, *People* v. *Truckee Lumber Co.*, 116 Cal. 397, 402 [58 Am. St. Rep. 183, 39 L. R. A. 581, 48 Pac. 374]; *Weis* v. *Superior Court*, 30 Cal. App. 730 [159 Pac. 464].) We think that the correct rule is well stated by Professor Pomeroy in the following passage from section 1894:

"While the right of the government to obtain an injunction to restrain criminal acts is not confined strictly to cases of nuisance, it would seem that it should be limited to cases closely analogous. Such relief, if applied to criminal acts in general, would supersede the criminal law and deprive parties of the right to a jury trial. Where the property rights of many citizens are involved, it is proper for the government, on their behalf, to invoke the powers of equity, and it would seem that only in such a case should the jurisdiction be assumed."

Petitioner asserts that "if the superior court of Sacramento County can issue an injunction to supersede the criminal syndicalism law, it can enjoin the violation of any other penal statute. It might issue an injunction forbidding the commission of burglary within the county." This assertion involves both a false premise and a *non sequitur*. [5] The injunction herein does not supersede the Criminal Syndicalism Act. It rather supplements it. That act remains in full force and effect, in no way modified, qualified, limited, or superseded by the injunction. [6] It does not at all follow that if equity may properly enjoin the acts

denounced by the criminal syndicalism law, that it may
also enjoin the commission of burglary. It may be con-
ceded that a court of equity would have no power to enjoin
the commission of a burglary merely because it is a crime.
[7] But it is well settled that an injunction may issue to
restrain the commission of acts which are violative of public
policy, which create a nuisance or assail the rights of prop-
erty, although such acts are specific crimes and punishable
as such. (*Pierce* v. *Stablemen's Union*, *supra*; *People* v.
*Truckee Lumber Co.*, *supra*; *Herald* v. *Glendale Lodge
No. 1289*, 46 Cal. App. 325 [189 Pac. 329]; *People* v. *Peter-
son*, 45 Cal. App. 457 [187 Pac. 1079]; *Weis* v. *Superior
Court*, 30 Cal. App. 730 [159 Pac. 464]; *Farmer* v. *Behmer*,
9 Cal. App. 773 [100 Pac. 901]; *Selowsky* v. *Superior Court*,
180 Cal. 404 [181 Pac. 652]; *People* v. *Stafford Packing Co.*,
193 Cal. 719 [227 Pac. 485].) "Something more than the
threatened commission of an offense against the laws of the
land is necessary to call into exercise the injunctive powers
of the court. There must be some interferences, actual or
threatened, with property or rights of a pecuniary nature;
but when such interferences appear the jurisdiction of a
court of equity arises, and is not destroyed by the fact that
they are accompanied by or are themselves violations of
the criminal law." (*In re Debs*, 158 U. S. 564 [39 L. Ed.
1092, 15 Sup. Ct. Rep. 900, see, also, Rose's U. S. Notes].)
"It is now clearly settled that a court of equity will enjoin
the criminal intimidation of workingmen, in order to pro-
tect the property interests of their employers. Similarly,
the court will enjoin strikers from committing criminal acts
of violence, and, likewise, it will restrain a criminal con-
spiracy of any number of people to injure property. These
applications of the rule, while recent, are still in accordance
with well-established equitable principles." (5 Pomeroy's
Equity Jurisprudence, sec. 1891.)

We will not take the space here to state in detail the ob-
jects, aims, and purposes of the organization known as the
Industrial Workers of the World, or the methods followed
by it. They have been set forth at some length in the
opinion of this court in *People* v. *Taylor*, 187 Cal. 378 [203
Pac. 85]. It will suffice to say that, in our opinion, the
case presented to the superior court of Sacramento County

and upon which the injunction herein was issued comes
fairly within the line of cases described by Professor Pome-
roy as "closely analogous" to a public nuisance. Petitioner
argues that, conceding inadequacy of the legal remedy to be
a proper ground for equitable relief, no such inadequacy ex-
isted in the present case, and that therefore the equitable
remedy was unwarranted. He bases this argument upon
the contention that the Criminal Syndicalism Act, unlike
other criminal statutes, is preventive in character. As he
says, "One does not have to commit criminal syndicalism
or sabotage before he may be taken into custody. All he
needs to do is advocate such acts." He argues that this
act is itself of an injunctive character, in that under it
persons may be punished for engaging in a conspiracy to
commit the crimes therein mentioned in advance of the com-
mission of any overt act in furtherance thereof. [8] From
this he reasons that the act itself, together with the enforce-
ment thereof by the criminal courts, affords a complete and
adequate remedy. Upon reflection it will be found that this
is not so. For example, it appears in the instant case that
the petitioner is a member and delegate of the Industrial
Workers of the World, one of the purposes of which is the
overthrow of organized government by unlawful means,
among which are sabotage, arson and other crimes of violence
and oppression. It also appears from the affidavits upon
which the citation was issued herein that ever since the
issuance of the injunction herein and up to and including
the very day of his arrest, petitioner has been busily engaged
in procuring new members for this organization. It appears
inferentially therefrom that he had obtained at least twenty-
four new members for this organization since the injunction
and prior to his arrest. It is apparent, therefore, that the
mere arrest and punishment of this petitioner will not
afford adequate protection to the property of citizens from
threatened injury and destruction so long as the remaining
members of the conspiracy are left at large to carry on its
criminal purposes, and together with them the twenty-four
new members who have been procured by petitioner in
contemptuous violation of the injunction. [9] We are
satisfied that the injunction here in question, as applied
to the peculiar and particular facts of this case, involved

a legitimate and proper exercise of equitable jurisdiction and is not void. Whether or no the trial court may have erred in granting it is a question with which we are not concerned upon this collateral attack.

If further authority be needed in support of our conclusion, the case of *State ex rel. Hopkins* v. *Industrial Workers of the World*, 113 Kan. 347 [214 Pac. 617], is precisely in point. That case involved the validity of an injunction issued at the suit of the state upon the relation of the attorney-general, enjoining the defendants, the Industrial Workers of the World and others, from committing substantially the same acts here enjoined, in violation of the Criminal Syndicalism Act of Kansas. The case arose there upon appeal from the order granting the injunction, and accordingly many grounds of attack were there available which could not be urged upon the collateral attack herein. The supreme court of Kansas affirmed the judgment in a brief opinion, resting its decision upon the case of *State* v. *Howat*, 109 Kan. 376 [25 A. L. R. 1210, 198 Pac. 686]. That case also involved upon appeal the validity of an injunction granted at the suit of the state on the relation of the attorney-general, restraining defendants, as officers and members of a labor organization, from calling a strike of miners and mine workers in the Kansas coal fields, in violation of the provisions of the Kansas law creating a court of industrial relations. Substantially all of the points made by petitioner herein were there considered and dealt with at length in a scholarly and well-reasoned opinion, concluding with the complete affirmance of the validity of the injunction appealed from. Petitioner asserts that the Howat case is to be distinguished from the case at bar by the circumstance that the state of Kansas was the owner of some of the lands and buildings threatened with injury by the contemplated action of the defendants. The decision of that case was not, however, predicated upon this circumstance. That court in its opinion referred to this circumstance and then said: "The authorities are in substantial accord that this special interest authorized the state to apply for, and authorized the district court to grant, the injunction; but this court holds that, aside from this indisputable ground, and without the aid of the statute expressly author-

izing actions of injunction in the name of the state to suppress public nuisances . . . the district court was possessed of power to grant the injunction.'' Moreover, it is alleged in the complaint for injunction here in question, ''that if the purposes of said defendants are accomplished, real and personal property owned by the residents and citizens of the state of California and by the state of California itself and the municipalities therein will be injured or destroyed by said defendants for the purpose of carrying out their said plans and theories, . . . '' It may be that this allegation is indefinite or uncertain or otherwise defective, but that is a question not open to consideration in this collateral proceeding. Petitioner also argues that inasmuch as the decision in the Howat case rested upon the validity of the Industrial Court Act, which has since been held invalid (*Charles Wolff Packing Co.* v. *Court of Industrial Relations*, 262 U. S. 522 [67 L. Ed. 1103, 43 Sup. Ct. Rep. 630]), that, to use petitioner's language, ''the Howat case loses its foundation and the Kansas injunction against the Industrial Workers of the World must go down in the same crash.'' This does not at all follow. **[10]** If the reasoning and conclusion of that decision were valid, though based upon the false premise of an invalid law, then if such reasoning and conclusion be based upon the sound premise of a valid law, as is the situation in the case at bar, the result is a perfectly sound structure. The constitutionality and validity of the California criminal syndicalism law are no longer open to question. (*People* v. *Steelik*, 187 Cal. 361 [203 Pac. 78]; *People* v. *Taylor*, 187 Cal. 378 [203 Pac. 85].) Moreover, as was pointed out in *Howat* v. *State of Kansas*, 258 U. S. 181 [66 L. Ed. 550, 42 Sup. Ct. Rep. 277], the validity of the injunction was not wholly dependent upon the constitutionality of the Industrial Court Act, and even if it had been the invalidity of that act would have served but to render the injunction erroneous, not void. Such an injunction must be obeyed by the parties thereto until reversed, however erroneous the action of the court in issuing it may have been, even though the error be in the assumption of the validity of a law going to the merits of the case.

**[11]** We find no merit in the contention that the issuance of the injunction here in question constituted an inter-

ference with the province of the legislature. That injunction made no new law. Neither did it supersede, repeal, or modify any existing law. It operated solely to aid in the better enforcement of the law which had been theretofore enacted by the legislature.

It may be conceded to be a recognized rule of equity that an injunction will not issue to restrain a publication solely upon the ground of the libelous character thereof. (A valuable and instructive review and criticism of this rule is to be found in an article by Professor Pound in 29 Harvard Law Review, 640 et seq.) But it does not follow that an injunction will in no case issue to restrain a publication. This court applied that rule in *Dailey* v. *Superior Court*, 112 Cal. 94 [53 Am. St. Rep. 160, 32 L. R. A. 273, 44 Pac. 458]. That decision was grounded upon the conclusion that such an injunction would violate section 9, article I, of the constitution of this state, providing that "every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. . . . " That case is not to be regarded as authority in support of petitioner's contention herein, for the reason that it has since been determined that the right of free speech guaranteed by the constitution does not include the right to advocate the destruction or overthrow of government or the criminal destruction of property or the other matters proscribed by the Criminal Syndicalism Act. (*People* v. *Steelik*, 187 Cal., at p. 375 [203 Pac. 78].)

[12] The existence and validity of the rule invoked by petitioner may be conceded, but that rule is nevertheless subject to the limitation that where the proposed publication threatens irreparable injury to rights of property and the other grounds of equitable jurisdiction exist, a court of equity will not hesitate to restrain such publication, regardless of its character as libelous or otherwise. (*Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418 [34 L. R. A. (N. S.) 874, 55 L. Ed. 797–804, 31 Sup. Ct. Rep. 492, see, also, Rose's U. S. Notes]; *Loewe* v. *California State Fed. of Labor*, 139 Fed. 71; *Jordahl* v. *Hayda*, 1 Cal. App. 696–699 [82 Pac. 1079]; 32 Cor. Jur. 174.)

We will next consider the claimed insufficiency of the affidavits herein to support the judgment. [13] It is true, as asserted by petitioner, that in a proceeding involving a

constructive contempt, the affidavits upon which the citation is issued constitute the complaint, and unless they contain a statement of facts which show that a contempt has been committed, the court is without jurisdiction to proceed in the matter. (*Frowley* v. *Superior Court,* 158 Cal. 220 [110 Pac. 817] ; *Hutton* v. *Superior Court,* 147 Cal. 156 [81 Pac. 409] ; *Hotaling* v. *Superior Court,* 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73].) Petitioner asserts that the affidavits herein state conclusions of law rather than the facts which would constitute the offense. As we understand his contention it is that the facts constituting the charge against the petitioner are not stated in the affidavits with that degree of certainty, particularity, and definiteness which would be required in an information charging him with these offenses in a criminal prosecution therefor. The second section of the Criminal Syndicalism Act contains five subdivisions, each enumerating a different group or class of offenses. The first prescribes advocating, teaching, or aiding and abetting the commission of criminal syndicalism or sabotage. The second forbids justifying or attempting to justify the same. The third proscribes printing, publishing, or circulating literature advising criminal syndicalism. The fourth denounces organizing or assisting in organizing any organization, society, or group organized to advocate, teach, or aid and abet it. The fifth forbids the commission of crime advocated by the doctrine of criminal syndicalism. It was held in the Steelik and Taylor cases, *supra,* that in a criminal prosecution under this act where the charge is based on subdivisions 1, 2, 3, or 5, the acts charged must be pleaded with a degree of particularity that will impart to the accused precise information which, with the evidence adduced to sustain such charge, upon conviction thereof, will operate as a bar to another or further prosecution for the same specific acts, but that where the charge is the violation of subdivision 4, the statement thereof in the language of said subdivision is sufficient. **[14]** It would be sufficient for the purposes hereof to point out that the affidavits herein charged that petitioner "had been active in the county of Sacramento and elsewhere throughout the state of California in obtaining persons to become members of said organization." This was equivalent to charging that he assisted in organizing, extending, and increasing

said organization. In addition to this he was charged with the circulation and distribution of various articles of literature, *verbatim* copies of which were included in the affidavits. Moreover, it is to be borne in mind that upon a collateral attack such as this the scope of inquiry into the sufficiency of an indictment or information is limited. It is true that the petitioner would be entitled to be discharged if the pleading totally failed to charge an offense known to the law. **[15]** But it is well settled that, if the indictment or information purports and attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into upon *habeas corpus* after judgment of conviction. (13 Cal. Jur., pp. 232, 233, and cases cited.) Whether or not the foregoing rule should be given full application to a case involving a prosecution upon a charge of constructive contempt need not be determined here. **[16]** It will suffice to say that in no event can the writ of *habeas corpus* be made to serve the purpose of a writ of error or an appeal. (Id., pp. 236, 237.)

**[17]** Petitioner asserts that the charging affidavits wholly failed to allege that petitioner knew of the injunction at the time he is charged with violating it. He supports this assertion by quoting the following language from one of the charging affidavits: "That said R. Wood stated to affiant that he knew that said order of injunction had been issued by said superior court." If this were the only averment upon the subject in the affidavit, petitioner's point would be well taken, because there is nothing therein to fix the time when petitioner is alleged to have acquired this knowledge. In the concluding paragraph of said affidavit, however, it is averred, "That during all of said times said R. Wood was and is a member of said Industrial Workers of the World, and *all of his said acts aforesaid were done by him . . . with full knowledge on the part of said R. Wood of the issuance and existence of said order of injunction.*" This averment was entirely sufficient upon this point. (*Mitchell* v. *Superior Court,* 163 Cal. 423 [125 Pac. 1061]; *Hedges* v. *Superior Court,* 67 Cal. 405 [7 Pac. 767].)

It is not claimed here, nor was it claimed in the court below, that the evidence was insufficient to establish the

truth of the charges. In fact, petitioner admitted the truth thereof by his failure to deny the same upon the hearing. (*Mitchell* v. *Superior Court, supra.*) He made no effort to purge himself of the contempt, but relied solely upon the claimed unconstitutionality of the law. We have considered all of the contentions made in his behalf upon this proceeding and find no merit in any of them.

It is ordered that the writ be discharged and the petitioner remanded.

Lawlor, J., Richards, J., Seawell, J., Lennon, J., Waste, J., and Shenk, J., concurred.