No. 40,428

STATE OF KANSAS, ex rel. JOHN ANDERSON, JR., as Attorney General of the State of Kansas, *Plaintiff,* v. W. E. MURPHY, as State Director of Alcoholic Beverage Control of the State of Kansas, *Defendant,* D. A. WINTERS and FAMOUS BRANDS DISTRIBUTORS, INC., *Intervenors.*

(332 P. 2d 533)

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■  Opinion filed December 6, 1958.

*John F. Eberhardt,* Special Assistant Attorney General, of Wichita, argued the cause, and *John Anderson, Jr.,* Attorney General, of Topeka, and *James D. Waugh,* Special Assistant Attorney General, of Topeka, were with him on the briefs for plaintiff.

*Raymond Briman,* of Topeka, argued the cause, and was on the briefs for Intervenor D. A. Winters. *Philip H. Lewis,* of Topeka, argued the cause, and *Thomas M. Lillard, O. B. Eidson, James W. Porter* and *Charles S. Fisher, Jr.,* of Topeka, were with him on the briefs for Intervenor Famous Brands Distributors, Inc. *Eugene W. Davis,* of Topeka, appeared for W. E. Murphy, Director of Alcoholic Beverage Control.

The opinion of the court was delivered by

FATZER, J.: This is an original action in quo warranto brought by the attorney general against the director of Alcoholic Beverage Control to secure a determination of the invalidity of regulation 14-6-6 promulgated by the director and to oust the director from enforcing the regulation. The regulation permits the director to authorize licensed alcoholic beverage distributors to bottle, label and sell alcoholic liquors purchased in bulk under labels owned by them. The present director, W. E. Murphy, has been substituted as defendant in place of Charles W. Pratt, the director holding office when the action was commenced. By leave of this court, two licensed distributors owning private labels, Famous Brands Distributors, Inc., and D. A. Winters (hereinafter called intervenors), were permitted to intervene on the side of the director. The director, while appearing by counsel, left the defense entirely in the hands of the intervenors.

This court appointed the Honorable Byron M. Gray as commissioner to hear evidence and make suggested findings of fact and conclusions of law. The commissioner, in his report, found the regulation in question valid and recommended that the writ be denied.

The pertinent portion of regulation 14-6-6, promulgated by the director in 1954 and approved by the Alcoholic Beverage Control Board of Review, provides:

"A licensed distributor may be authorized to bottle, label and sell to licensed retailers, *under labels owned by the distributor,* alcoholic liquors . . . purchased in bulk . . ." (Emphasis added.)

Generally speaking, there are three different levels of activity in the liquor industry: manufacturing (including distilling and rectifying), distribution, and retail sale to the ultimate consumer. It was stipulated by the parties that at the time the Kansas Liquor Control Act was enacted in 1949, manufacturers offered alcoholic liquor for sale to distributors under two basic methods; one, as case goods (liquor bottled, labeled and cased by the manufacturer), and, two, in bulk. Bulk sales might occur at different stages in the aging process and the label ultimately affixed to the bottled product might be the manufacturer's label or the distributor's private label. Distributors might purchase (1) liquor already warehoused, aged, bottled, sealed and labeled by the manufacturer; (2) liquor in bulk at the moment the freshly made or distilled product was run, with the liquor then warehoused, aged and bottled by the manufacturer *with the manufacturer's label*; (3) liquor in bulk already warehoused and aged and suitable for immediate bottling, for bottling by the manufacturer *under the manufacturer's label*; (4) liquor in bulk at the moment the freshly made or distilled product was run with the liquor then warehoused and aged by the manufacturer and ultimately bottled by the manufacturer or another distiller *under the distributor's private label*; (5) liquor in bulk already warehoused and aged and suitable for immediate bottling, for bottling by the manufacturer or another distiller *under a private label owned or controlled by the distributor*. The eight major national manufacturers, however, do not permit bottling of their products except under their own labels. Wine was purchased either bottled and labeled by the manufacturer under his own label; in bulk for bottling by the manufacturer under the manufacturer's label or under the distributor's private label; or in bulk for bottling by the distributor under his private label or under the manufacturer's label.

Notwithstanding the industry practice of labeling liquor purchased in bulk with the distributor's private label, plaintiff contends that the regulation which purports to authorize such practice conflicts with the intent of the Kansas Liquor Control Act, G. S. 1949, 41-101, *et seq.*, and with specific sections thereof. Three major arguments are advanced in support of this contention. All reference to the act is directed to G. S. 1949 unless otherwise noted.

Plaintiff first maintains that the act does not specifically provide that a distributor may label his wares with a private label and hence it was the intention of the legislature to withhold the privilege. It

argued that 41-104 forbids the manufacture, bottling or sale of alcoholic liquor except as specifically provided in the act. Plaintiff concedes, however, that 41-306 authorizes distributors to purchase liquor in bulk and bottle it before resale, and that 41-210 and 41-211 empower the director to promulgate rules and regulations "necessary to carry out the intent and purposes of this act" including regulations determining the nature of and the representations to be shown upon the labels, but maintains that these sections are silent with respect to label *ownership,* and, therefore, distributors purchasing liquor in bulk are limited to bottling the same under the manufacturer's label only. We cannot accept this contention. The pertinent portions of the statute cited by plaintiff are as follows:

"41-104. No person shall manufacture, bottle, blend, sell, barter, transport, deliver, furnish or possess any alcoholic liquor for beverage purposes, *except as specifically provided in this act.* . . ." (Emphasis supplied.)

"41-210. The director shall adopt and promulgate such rules and regulations as shall be necessary to carry out the intent and purposes of this act. . . . It is intended by this grant of the power to adopt rules and regulations, that the director shall be clothed with broad discretionary powers to govern the traffic in alcoholic liquors, and to enforce strictly all the provisions of this act. . . ."

"41-211. The rules and regulations established by the director, among other things, shall include regulations . : . (2) determining the nature of and the representations to be shown upon the labels attached to the containers . . . (9) in the case of manufacturers and distributors of alcoholic liquors, requiring the labels attached to all containers of such liquors, which are intended for sale in this state to set forth, among other things, in plain legible print in the English language, the name and kind of alcoholic liquors contained therein, together with their alcoholic content, and if a blended product (except wine) to so state, except that the director, if he deems it unnecessary to show the alcoholic content of beer on labels of containers of beer, shall not be required to make a regulation requiring it to be shown thereon. . . ."

"41-306. An alcoholic liquor distributor's license . . . shall permit the purchase of such alcoholic liquors in barrels, casks or other bulk containers and the bottling of such alcoholic liquors before resale thereof, but all bottles or containers so filled shall be sealed, labeled, stamped, and otherwise made to comply with all provisions, rules and regulations governing manufacturers in the preparation and bottling of alcoholic liquors. . . ."

At the outset plaintiff assumes that the broad prohibition of 41-104 extends to the sale of any liquor by a distributor under his own private label. The argument necessarily implies that a specific exception to this prohibition is found in other sections of the act for the sale of liquor in containers labeled by distributors with manufacturers' labels, but that no exception is found which permits label-

ing under a distributor's private label. In fact, plaintiff makes the broad assertion that no such exception exists. Assuming, *arguendo*, that 41-104 prohibits a distributor from labeling containers with his own private labels, we cannot say that 41-306, which authorizes a distributor to purchase liquor in bulk and bottle, seal, label and stamp the same before resale, applies only to labeling with a manufacturer's label. Liquor purchased in bulk and bottled by a distributor must be labeled, and the statute, by necessary implication, gives distributors this right. We find nothing in 41-306 which indicates the legislature intended to limit the right to label only with a manufacturer's label.

In cases involving statutory construction this court has often stated the rule that in determining legislative intent the court must look to the situation and existing conditions at the time of enactment. (*State v. Kelly*, 71 Kan. 811, 81 Pac. 450; *Ruppenthal v. Maag*, 153 Kan. 588, 113 P. 2d 101; *Perkins v. Lenora Rural High School*, 171 Kan. 727, 237 P. 2d 228.) In *Parsons v. City of Birmingham*, 223 Ala. 610, 137 So. 665, the court declared:

"In ascertaining the meaning of constitutional and statutory terms, we should construe them in the light of accepted and well-known trade customs. . . ." (p. 611.)

The parties stipulated that at the time of passage of the Kansas act it was customary in the liquor industry for manufacturers to offer their products to distributors in bulk for bottling and labeling either under the manufacturer's label or under the distributor's private label. In determining the intention of the legislature in providing that distributors might label liquor bought in bulk, we must assume that it was aware of this practice and that in granting to distributors the broad right to label, no qualification was intended. The fact that labeling under distributors' private labels was a "minority" practice cannot affect this conclusion.

Next, plaintiff argues that regulation 14-6-6 is repugnant to section 41-1101, and therefore section 41-306 must be interpreted as countenancing the bottling of bulk liquors only under the manufacturer's label, to bring it in harmony with 41-1101.

Pertinent portions of 41-1101 are as follows:

"(1) It shall be unlawful for any distributor licensed under this act to purchase any alcoholic liquor from any manufacturer . . . unless such manufacturer . . . shall file with the director a written statement . . . in which he agrees that he will sell any of the brands or kinds of alcoholic liquor manufactured or distributed by him to any distributor licensed in this state and that such sales will be made at the same current price and without dis-

crimination and that price lists showing the current prices will be filed by him in the office of the director . . . if any manufacturer . . . shall not have a sufficient supply of alcoholic liquor of any of the brands or kinds which he manufacturers or distributes to supply the demands of all licensed distributors, he may ration such alcoholic liquor and apportion the available supply among the licensed distributors purchasing or attempting to purchase the same. . . ."

"(2) It shall be unlawful for any retailer licensed under this act to purchase any alcoholic liquor from any distributor licensed under this act unless such distributor shall file with the director a written statement . . . in which he agrees that he will sell any of the brands or kinds of alcoholic liquor distributed by him to any retailer licensed in this state and that such sales will be made to all such licensed retailers at the same current price and without discrimination . . . if any licensed distributor making any such agreement shall not have a sufficient supply of alcoholic liquor of any of the brands or kinds which he distributes to supply the demands of all licensed retailers he may ration such alcoholic liquor and apportion the available supply among the licensed retailers purchasing or attempting to purchase the same. . . ."

Plaintiff asserts that the purpose of 41-1101 is to outlaw exclusive franchises by Kansas distributors, to insure that each distributor is able to purchase and handle every brand or kind of liquor which every other distributor is able to purchase and handle, so that all distributors can operate upon terms of absolute equality. Plaintiff points to the stipulation of facts where it is admitted that to allow a disributor to use a private label enables him to sell a brand which other distributors are unable to acquire and handle, unless the distributor possessing the private label is willing to sell, and then only at the price that distributor sets. It is argued that to permit a distributor to use a private label in effect grants him an exclusive franchise, a competitive advantage which 41-1101 (1) was intended to prohibit.

We are not persuaded. 41-1101 (1) merely grants to distributors equal rights of purchase from manufacturers and protects distributors against discrimination by manufacturers, while 41-1101 (2) protects retailers against discrimination by distributors. Under the challenged regulation distributors retain their equal right to purchase from manufacturers. The statute provides that each distributor may purchase the same *brands or kinds* of liquor at the same prices and under the same conditions as every other distributor. The use of the words "brands or kinds" in the statute clearly indicates that the legislature intended the nondiscriminatory sale provision to cover both sale of case goods and sale in bulk. A manufacturer who offers his bulk product for sale to one distributor for bottling under a private label must offer the same *kind* of liquor, *i. e.,*

the bulk product, to every other distributor at the same price and under the same conditions. Conversely, every distributor may purchase the same *kind* of liquor from that manufacturer as is purchased by the distributor who bottles under a private label. 41-1101 (1) does not attempt to control the subsequent affixing of brand labels by distributors nor does it provide for competitive equality among distributors *after* the initial purchase on equal terms from the manufacturer. As between themselves and the retailer, each distributor must scrupulously avoid discrimination; but as between themselves, the law is silent. As long as he avoids discrimination against retailers, each distributor apparently is free to compete with all distributors in whatever way he can, subject, of course, to the valid regulations of the director. We find no basis for the argument that competition among distributors after their initial purchase from manufacturers is repugnant to the purpose of the law to prevent manufacturers from discriminating against distributors.

Finally, plaintiff maintains that private labels enable distributors to secure tie-in sales which conflict with the policy of the act and are specifically enjoined by other valid regulations of the director. Regulation 14-4-8 (4) (*d*) provides that distributors must sell at list prices any quantities ordered in lots of one or more cases, and regulation 14-4-18 provides that distributors may absorb transportation costs only on orders from retailers exceeding 100 pounds (three cases). According to the stipulation of facts, Kansas retailers generally purchase a specific brand from a distributor in less than case lots and then order quantities of other brands from the same distributor to fill out a case or three cases. The testimony introduced before the commissioner indicated that distributors owning private labels use them to get extra business on *other* brands. If a distributor successfully builds up consumer demand for his private label, the retailer will re-order that brand from him. Supposedly, the retailer will not buy a full case of the private label, but will buy enough of other nationally advertised brands, carried in stock by other distributors, to fill up a case or three cases. Plaintiff claims that the actual effect of the use of private labels is to *force* retailers to buy from the private label distributor other brands of liquor they would normally buy elsewhere, thus a tie-in device proscribed by regulation 14-2-10 is made possible. Regulation 14-2-10 reads:

"*Tie in sales prohibited.* No licensee of any class shall, as a condition for the sale or delivery of alcoholic liquor to any other licensee or to a customer, require that such other licensee or customer purchase or contract to purchase

alcoholic liquor of another form, quantity or brand in addition to or partially in lieu of that specifically ordered or desired by such other licensee or customer. No licensee of any class shall sell or deliver alcoholic liquor in any form or quantity or of any brand to another licensee or to a customer, under any arrangement, agreement or understanding, direct or implied, that such sale or delivery will be made only if such other licensee or customer also buys or accepts delivery of a quantity of alcoholic liquor of another form or brand." (Emphasis supplied.)

Plaintiff's point is not well taken. The essence of a tie-in device, as recognized by regulation 14-2-10, is the conditioning of the sale of one product or quantity desired by the purchaser upon the purchase of another product or quantity and the refusal to sell the desired product unless the other product is also purchased. No claim is made that distributors of private label products condition the sale of these goods on the purchase of other nationally advertised brands. If a retailer chooses to purchase quantities of nationally advertised brands to fill out a case or three cases, and voluntarily takes advantage of case-lot prices or the saving on transportation costs, regulation 14-2-10 is not violated by such purchases. There is nothing in this record to indicate compulsion on the part of private label distributors. The fact that distributors depend on that voluntary action by retailers to secure profit on handling of private label merchandise does not prima facie make the device a tie in.

We have examined plaintiff's other contentions and find them substantially without merit.

We find nothing in this record which indicates that regulation 14-6-6 is not authorized by the Kansas Liquor Control Act or is in conflict with any section of that act, or any other valid regulation of the director. Judgment must necessarily be entered for the defendant. The writ prayed for is denied.

PRICE, J., dissenting and concurring specially: In my opinion, looking through form to substance, the relief *actually* sought in this original action is purely *injunctive* in nature, of which this court has no *original* jurisdiction. I think the court should not have accepted jurisdiction in the first place and that the action should be dismissed under the rule of *Collins v. York*, 175 Kan. 511, 265 P. 2d 313.

In view of the fact the court has accepted jurisdiction, however, I will say that I agree with the conclusion the writ should be denied.