No. 43,456

State of Kansas, ex rel. William M. Ferguson, Attorney General, and Walter Reed Gage, State Director of Alcoholic Beverage Control, *Appellees*, v. Kansas Retail Liquor Dealers Foundation, Inc., a Corporation; Lawrence Bright, Ed Kreipe, Eddie Campion, O. B. Cramer, Carl M. Thompson, Loren Hicks, and Beatrice Shane, Members of the Board of Directors of Kansas Retail Liquor Dealers Foundation, Inc., a Corporation; Lawrence Bright, Ed Kreipe, Eddie Campion, O. B. Cramer, Carl M. Thompson, Loren Hicks, and Beatrice Shane, individually and as representatives of all duly licensed Alcoholic Liquor Retail Dealers in the State of Kansas; and T. M. Murrell, Secretary of Kansas Retail Liquor Dealers Foundation, Inc., a Corporation, *Appellants*.

(387 P. 2d 171)

Opinion filed December 7, 1963.

*T. M. Murrell*, of Topeka, argued the cause, and *George A. Scott* and *Jack A. Quinlan*, both of Topeka, were with him on the briefs for the appellants.

*W. B. Kirkpatrick*, Assistant Attorney General, of Topeka, argued the cause, and *Wm. M. Ferguson*, Attorney General, and *Edward Curry*, Assistant Attorney General, both of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a declaratory judgment action and a request for injunctive relief brought by the State of Kansas on the relation of the attorney general and the State Director of Alcholic Beverage Control against the Kansas Retail Liquor Dealers Foundation, Inc., and others connected therewith. The action challenges the validity of the purposes and functions of the Foundation under the provisions of the Alcoholic Beverage Control Act.

The case was tried on an agreed statement of facts.

On April 29, 1962, the Kansas Retail Liquor Dealers Association had its regular board meeting in Topeka, Kansas, and duly passed the following resolution:

"RESOLVED, that the Kansas Retail Liquor Dealers Association organize and form a non-profit corporation by the name of Kansas Retail Liquor Dealers Foundation, Inc. with its principal business office in Topeka, Kansas, 3310 Harrison Street. Its registered agent to be T. M. Murrell; that the Board authorize seven (7) in number of its members to act as incorporators to execute all documents for that purpose, these members are as follows: . . ."

The names and addresses of the seven incorporators were set out.

The resolution provided that the incorporators would serve as the directors of the Foundation and fixed their terms. It further provided, ". . . that the Treasurer of the Kansas Retail Liquor Dealers Association be directed to pay all necessary expenses of the incorporation of the Kansas Retail Liquor Dealers Foundation, Inc."

Pursuant to the resolution, articles of incorporation were filed in the office of the Secretray of State April 30, 1962. The articles of incorporation state the purposes of the corporation as follows:

"This corporation is organized NOT FOR PROFIT and the objects and purposes to be transacted and carried on are:

"To foster and promote in every and any lawful manner the interests of persons, firms, associations, corporations and others engaged or interested directly or indirectly in the alcohol beverage industry, or in any branch thereof, or in any industry or business alike or incidental thereto.

"In furtherance, but not in limitation, of the foregoing general powers, it is expressly provided that the organization shall have the following powers:

"A. To engage in educational and publicity campaigns and programs.

"B. To support and improve regulatory laws governing the sale and use of alcoholic beverage, and to uphold the system of private enterprise and the manufacture, distribution and sale of alcoholic beverage.

"C. To provide honest opposition to the principals of prohibition, and its resulting evils.

"D. To support related public relation programs.

"E. To educate those engaged in the sale of liquor under the authority by the State of Kansas.

"F. To create and stimulate a fair and intelligent attitude on the part of the public with reference to the requirements of the Kansas liquor laws and regulations.

"G. To accomplish fair and intelligent legislation with respect to the handling of liquor by retail dealers licensed by the State of Kansas.

"H. To foster the business of its members and to distribute and supply such members of the public with active and reliable information on matters pertaining to the handling and distribution of liquor.

"I. To use all possible means to remove abuses from the business in the sale of liquor and to promote harmony among the licensed retail liquor dealers of Kansas.

"J. To own so called 'private labels' and to lease the same to distillers or distilleries of alcoholic beverage for use on all categories of alcoholic beverage and to contract for royalties from the sale thereof.

"K. To own property, real or personal, and to buy, sell and lease the same.

"L. To execute contracts and do all things natural persons may do.

"M. To have and exercise all powers necessary or incidental to carry out the corporate purposes, to exercise all other powers permitted by law, and to possess and enjoy all rights or powers which now are or at anytime hereafter may be granted to or exercised by a corporation of this character."

The corporation was not to have stockholders or members.

Pursuant to the authority granted by the Board of Directors a contract was negotiated with the McCormick Distilling Company May 1, 1962. The contract provided for the leasing of a private label "Big K" by the Foundation to McCormick Distilling Company in consideration of royalties to be paid the Foundation as provided in the contract.

On May 7, 1962, the trade-mark owned by the Foundation "Big K" was registered with the office of the Secretary of State of Kansas. Both federal and state approval was obtained for the label and trade-mark "Big K" to be used on bourbon, 86-proof; Vodka 80-proof; Vodka 90-proof, and Gin 90-proof.

Prices were duly posted with the office of the Alcohol Beverage Control Board on or before May 15, 1962. They were approved, printed and posted in the official mandatory minimum price schedule published and printed by the office of the Alcohol Bev-

erage Control Board to be effective for the third quarter of 1962 commencing July 1, 1962. Labels and photographs of the package were submitted to the office of the Director pursuant to ABC Rule, 14-61.

On or about June 19, 1962, the McCormick Distilling Company wrote a letter to the Director of Alcohol Beverage Control requesting a release date of July 16, 1962, for the sale of "Big K" Bourbon, Gin and Vodka. On June 22, 1962, a letter was addressed to Mr. Howard Johnson, Sales Director, McCormick Distilling Company, Weston, Missouri by the Director of Alcohol Beverage Control which reads:

"Your letter of June 18, requesting release date of July 16 for the sale of 'Big K' Bourbon 86-proof, 'Big K' Gin 90-proof, and 'Big K' Vodka 80 and 90 proof, for the third quarter, 1962, received.

"As per your request, the release date asked by you is approved."

The "Big K" brand of alcoholic liquor has been purchased in the State of Kansas by the consuming public at a retail price comparable to nationally known brands of alcoholic liquor offered for sale on the Kansas market. The proceeds from the royalties collected by the Foundation have been impounded.

The district court concluded that the purpose expressed in the articles of incorporation of the Foundation were in violation of the Alcoholic Beverage Control Act and enjoined the Foundation from carrying out such purposes expressed in its charter. The defendants have appealed.

The appellants present two basic questions:

1. Does the corporate function of the defendant Foundation constitute an activity which gives the members of the Kansas Retail Liquor Dealers Association a "beneficial interest" in the manufacture of alcoholic beverages in violation of G. S. 1961 Supp., 41-311 (2) (c)?

2. Does the corporate function of the defendant Foundation constitute an activity which places each member of the Kansas retail Dealers Association in violation of G. S. 1949, 41-702 (1), in that the individual retailers will receive something of value?

The two questions are closely related. The same facts will apply to each and they will be considered together.

The statute relating to classes of persons to whom retail liquor licenses shall not be issued provides in part:

"A person who has beneficial interest in the manufacturing, preparation or wholesaling of alcoholic beverages: . . . (G. S. 1961 Supp., 41-311 [2] [c].)

The statute forbidding the retailers to receive and the wholesalers to give anything of value reads:

"It shall be unlawful for any person having a retailer's license, or any officer, associate, member, representative or agent of such licensee to accept, receive, or borrow money, or anything else of value, or to accept or receive credit, directly or indirectly, from any person, partnership or corporation engaged in the manufacturing, distributing or wholesaling of such liquor, or from any person connected with or in any way representing, or from any member of the family of such manufacturer, distributor or wholesaler, or from any stockholders in any corporation engaged in manufacturing, distributing or wholesaling of such liquor, or from any officer, manager, agent, or representative of such manufacturer, distributor or wholesaler. It shall be unlawful for any manufacturer, distributor or wholesaler to give or lend money or anything of value or otherwise loan or extend credit, directly or indirectly, to any such licensee or to the manager, representative, agent, officer or director of such licensee. . . ." (G. S. 1949, 41-702.)

It would appear that if the retail liquor dealers have any beneficial interest in the manufacturing, preparation, or wholesaling of alcoholic beverages due to the purposes and functions of the Foundation, they will receive something of value from such manufacturing, preparation or wholesaling. The something of value will be in the form of substantial royalties received from a manufacturer or distiller, the McCormick Distilling Company, for the privilege of placing the "Big K" label on its bottled liquor. A questionable privilege, the use of an unknown brand label, unless the sale of the liquor so labeled was to be pushed by the Kansas retail liquor dealers.

The appellants would contend that the Foundation, which was conceived, fostered and is completely dominated by the Kansas retail liquor dealers, may operate wholly as an eleemosynary association, and, if so, the retailers will receive no benefit. The Foundation's articles of incorporation refute the contention.

The general purpose of the Foundation is to foster and promote in every and any lawful manner the interest of persons or firms engaged in the alcoholic beverage industry. In furtherance of the general purpose, but not in limitation, the corporation was given specific powers to engage in educational and publicity campaigns; support and improve regulatory laws; provide honest opposition to the principles of prohibition; support related public relation programs; accomplish fair and intelligent legislation relating to retail liquor dealers in Kansas; foster the business of its members, and own so called "private labels" and contract for royalties.

It is apparent that the purpose of the Foundation is to raise a fund to finance the activities of the Kansas Retail Liquor Dealers Association, and thus avoid the necessity of individual retailers reaching into their pockets to finance such activities.

The purpose of the Alcoholic Beverage Control Act was to completely divorce the retail sales of liquor from manufacturing and wholesaling. That which is directly prohibited cannot be done indirectly.

In *State v. Payne*, 183 Kan. 396, 327 P. 2d 1071, it is stated:

"In its comprehensive scheme of regulating, licensing and taxing alcoholic liquor from the time of its manufacture or importation into the state until its ultimate sale by a licensed retailer for use and consumption, the manifest purpose of the legislature was to channelize the liquor traffic; to minimize the commonly attendant evils; also, to facilitate the collection of revenue. To this end the manufacture, sale, transportation, and possession are permitted only under carefully prescribed conditions (G. S. 1949, 41-104), and subject to constant control by the state (G. S. 1949, 41-208). All phases of the traffic are declared illegal unless definitely authorized by the act (G. S. 1949, 41-104). . . ." (p. 402.)

The legislature saw a possible evil in any tie-in between retailers and manufacturers.

The appellant relies on the case of *State, ex rel., v. Murphy*, 183 Kan. 698, 332 P. 2d 533, in which this court held valid the use of a private label by a retailer. In that case there was no contention that the retailer was receiving a royalty or rebate from a wholesaler or manufacturer for the right to use the private label. Therefore, the decision is not applicable to the facts in the present case.

We must conclude that the Foundation was to be operated for the benefit of the Kansas retail liquor dealers; it was to operate on funds received from a liquor manufacturer; the funds, although designated as royalties, were more in the form of rebates for pushing the sale of the manufacturer's liquors under the "Big K" label, and the activities and purposes of the Foundation were in violation of G. S. 1961 Supp., 41-311 (2) (c) and G. S. 1949, 41-702.

The defendant contends that no justiciable controversy exists, and will not exist, until such time as it is known how the money received by the Foundation from the McCormick Distilling Company is to be spent.

We are not persuaded by appellants' contention. It is to be presumed that the funds will be expended to accomplish the purposes stated in the Foundation's articles of incorporation. An actual controversy existed when the Foundation entered into the contract

with the distiller for the use of the "Big K" label and started collecting funds for the accomplishment of its corporate purposes.

Although the action was brought for a declaratory judgment, the form of the action was in the nature of injunction, which is a preventive measure. In order for it to be effective, it must operate before the unlawful act is consummated. In *Franks v. State Highway Commission*, 182 Kan. 131, 136, 319 P. 2d 535, it is said:

". . . Injunction is an equitable remedy and is a preventative measure to maintain the *status quo* (28 Am. Jur., Injunctions, § 5, p. 199, 43 C. J. S., Injunctions, § 1, p. 406) or to operate *in futuro* (*Andeel v. Woods*, 174 Kan. 556, 258 P. 2d 285.)"

"A court of equity is not powerless to prevent the doing of an act merely because it is denounced as a public offense." (*State, ex rel., v. Hines*, 178 Kan. 142, Syl. 5, 283 P. 2d 472.)

Although an injunction will not ordinarily be allowed to prevent an unlawful act which is merely anticipated, the state is not required to wait until the unlawful act has been consummated before taking steps to protect the public. Public prosecutors have the authority to proceed by an injunctive action to prevent the violation of the state's police regulations where an unlawful act must be anticipated from the facts and circumstances which have already occurred. (*Dougan v. Shawnee County Comm'rs*, 141 Kan. 554, 43 P. 2d 223.)

In *The State, ex rel., v. Industrial Workers of the World*, 113 Kan. 347, 214 Pac. 617, this court had under consideration a petition to enjoin an anticipated criminal act. The facts were stated as follows:

"The petition described the organization and management of the Industrial Workers of the World, and of certain branches under the names 'Agricultural Workers Industrial Union No. 400,' 'Agricultural Workers Organization of the I. W. W. No. 400,' 'Oil Workers Industrial Union No. 450' and 'O. W. I. U. No. 450.' The petition also described the purposes, and the methods of accomplishing the purposes, of the organization. Certain of these methods were denounced as felonious by chapter 37 of the Laws of 1920. This statute was analyzed in the opinion in the case of *The State v. Breen*, 110 Kan. 817, 205 Pac. 632."

It was held in the syllabus:

"The petition in an action to restrain the Industrial Workers of the World, its executive board, and its officers, agents, and members, from committing in Kansas depredations against property by criminal syndicalism and sabotage, as defined by chapter 37 of the Laws of 1920, considered, and held to state a cause of action as against objection that a court of equity has no power to enforce a criminal statute by injunctive order, and other objections."

300

An actual controversy did exist and the issues were ripe for judicial determination

The judgment is affirmed.

APPROVED BY THE COURT.