No. 53,065

MARY FINHOLM CRAY, *Plaintiff-Appellee,* v. THOMAS J. KENNEDY, DIRECTOR, ALCOHOLIC BEVERAGE CONTROL, KANSAS DEPARTMENT OF REVENUE, *Defendant-Appellant.*

(640 P.2d 1219)

Opinion filed February 27, 1982.

*Robert E. Duncan, II,* special assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, and *James E. Flory,* assistant attorney general for the Alcoholic Beverage Control, were with him on the brief for the appellant.

*Bob W. Storey,* of Topeka, and *Robert F. Bennett,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, argued the cause, and were on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case arose as the result of the denial of an alcoholic beverage distributor's license by the Director of the Alcoholic Beverage Control (ABC) and the ABC Board of Review. The applicant, Mary Finholm Cray, appealed to the district court of Shawnee County. It reversed and ordered the director to grant the license. The ABC director has appealed to this court.

In the district court the facts were stipulated by the parties along with the legal issues to be determined. Since the factual circumstances must be considered in the determination of the legal issues presented, we will set forth in full the facts as stipulated:

"Stipulated Statements of Fact

"1. On or about April 27, 1979, Cloud L. Cray, Jr. entered into an agreement with Eastern Distributing Co., Inc., Edco Enterprises, Inc., State Distributors, Inc., Cotter Charcoal Company, and Gene H. Baird whereby Cloud L. Cray, Jr. gave a personal guarantee of credit to be extended by the City National Bank of

Atchison, Atchison, Kansas, for credit extended and to be extended in the maximum amount of $400,000.00, in return for which he was granted options to purchase the controlling stock in Eastern Distributing Co., Inc. and Edco Enterprises, Inc. The original 'Financing and Stock Option Agreement' is not a part of the record. The Stock Purchase and Compromise Agreement dated February 29, 1980, and the testimony of Cloud L. Cray are a part of the record.

"2. The guarantee came about as a result of a contract made by Mr. Baird after the franchising law of Kansas was passed. He indicated to Mr. Cray that he needed to establish credit with a bank of up to $400,000.00. Mr. Cray, who was a director and nominal stockholder of the City National Bank of Atchison, Atchison, Kansas, contacted the bank to see if the loan could be made. The bank indicated that it could not make the loan without an audit which would take time. Both Mr. Baird and Mr. Cray indicated that time was of the essence. The bank then indicated that it would be willing to make the loan if Mr. Cray personally guaranteed it, and this he was willing to do, based upon the unaudited statement. The 'Financing and Stock Option Agreement' referred to above was a result of these negotiations.

"3. At the time of these negotiations, and at the time of execution of the agreement, Eastern Distributing Co., Inc. held an alcoholic beverage distributor's license from the State of Kansas.

"4. At the time of these negotiations, Cloud L. Cray, Jr. was an officer, director, and minority stockholder of Midwest Solvents Company, Inc. and McCormick Distilling Company. Midwest Solvents Company, Inc. holds an alcoholic beverage license issued by the State of Kansas. McCormick Distilling Company is authorized by the Alcoholic Beverage Control to do business in Kansas.

"5. Mr. Cray did not, prior to the execution of said guarantee, or subsequent to such execution, seek or obtain the approval of either corporate licensee for the action which he took individually, nor did he pledge the individual credit of either licensee as a part of the guarantee, nor has he subsequently sought or obtained ratification of his actions by either of the licensees, and in all respects acted individually and not as agent for either of said licensees.

"6. Prior to the execution of the Financing and Stock Option Agreement, Mr. Cray sought the advice of an individual whom he believed to be acquainted with and knowledgeable of the Kansas law with reference to such a transaction and was advised that the transaction contemplated was not contrary to that law. His opinion in this regard was further supplemented by the fact that he does individually own interests in distributorships in the State of Missouri under a law which he believes to be similar to the laws of the State of Kansas. Mr. Cloud L. Cray, Jr. is not an attorney.

"7. Subsequent to the execution of the Financing Agreement and Stock Option, it was learned by Mr. Cloud L. Cray and others that the unaudited statements furnished were incorrect and not sufficient to support the loan and it was further determined, even prior to the due date, that the loan could not be paid.

"8. On February 29, 1980, Eastern Distributing Co., Inc. and others entered into a 'Stock Purchase and Compromise Agreement' with Cloud L. Cray, Jr. whereby he and his nominee or assignee would acquire a majority interest in Eastern Distributing Co., Inc.

"9. Thereafter, in the process of consummating the agreement last above

described, Mr. Cray learned from his attorney that, while the law was not totally clear, it was unlikely that the Director of the Alcoholic Beverage Control would permit such acquisition under the provisions of K.S.A. 41-704.

"10. Thereafter, Mr. Cray was contacted by his nephew, Richard A. Cray, who expressed an interest in the acquisition of Eastern by his wife, Mary Finholm Cray. If the deal and transfer could be consummated, it would extricate Cloud L. Cray, Jr. from a questionable position under the liquor laws of the State of Kansas and release him from a potential obligation as guarantor of approximately $400,000.00.

"11. Mary Finholm Cray had been a resident of the State of Kansas for a sufficient period of time to apply for approval in her name. As a matter of fact, the question of residency of Mary Finholm Cray, the applicant herein, was never an issue.

"12. Cloud L. Cray, Jr. then assigned whatever interest he had in Eastern Distributing Co., Inc. to Mary Anne Finholm Cray.

"13. The assignment was approved and agreed to by the parties to the Stock Purchase and Compromise Agreement.

"14. In March of 1980 an application for a new license, and thus approval of the transfer on behalf of the applicant, Mary Finholm Cray, was filed with the Director.

"15. At the time of filing the application, and at the current date, Mary Cray has no interest, legal or equitable, in any manufacturer licensed under the Kansas liquor law. Her husband, Richard A. Cray, at the time of filing the application, owned 3,956 shares . . . which comprises three-tenths of one percent of the total outstanding stock of Midwest Solvents Company, Inc., a manufacturer licensed under the liquor laws of Kansas. At the time the hearing was held before the Alcoholic Beverage Control Director, Richard Cray had set up an irrevocable trust, leaving said stock to his unborn issue. The order of the Director declared that the trust was not acceptable, and prior to the hearing before the Board of Review of the Alcoholic Beverage Control, Richard Cray divested himself completely of all interest in any Midwest Solvents Company, Inc. stock by selling the same to other employees of the corporation.

"16. Midwest Grain Processing Equipment Company, Inc. is not licensed as a manufacturer under the liquor laws of the State of Kansas. It is a company formed to acquire from the Atchison Hospital Association certain equipment and assets which are leased to Midwest Solvents Company, Inc. and possibly others. Richard A. Cray's interest in this corporation is in an irrevocable trust created by his father, distributable to him at age thirty, in which, at the time of the application and the hearing, his uncle, Cloud L. Cray, Jr., was trustee. Since that time Cloud L. Cray, Jr. has resigned as trustee, and the current trustee is Richard Cray, Jr. Neither Richard Cray's father (Richard Cray, Jr.) nor his uncle (Cloud L. Cray, Jr.) are individually or in combination, majority stockholders of Midwest Grain Processing Equipment Company, Inc., although each is a director.

"17. Applicant agreed to place any Midwest Solvents Company, Inc. stock which was held by her husband in an irrevocable trust to satisfy the requirements of the Division, the beneficiary being the couple's unborn child. At the hearing which was held on March 27, 1980, and subsequent thereto the exhibits required by the Director, including the irrevocable trust created by the applicant's hus-

band, were submitted. The trust gave to the applicant's father all of the voting rights and the trust was terminated if the applicant or her husband ceased to have any interest in Eastern.

"18. On April 16, 1980, the Director issued an order denying the license application.

"19. Subsequently, and on the same date on which the Director entered his order, all of the stock owned by Richard A. Cray in Midwest Solvents Company, Inc. was purchased and transferred to the Midwest Solvents Employees Stock Option Plan and the Director was so notified on April 23, 1980.

"20. Thereafter, an addendum was drafted to the Stock Purchase and Compromise Agreement and a consulting agreement was drafted between Eastern Distributing Co., Inc., State Distributors, Inc., and the husband of applicant. The addendum was executed on May 1, 1980, and primarily extended time in which to consummate the earlier transactions.

"21. The applicant appealed to the Alcoholic Beverage Control Board of Review and a hearing was held on May 7, 1980.

"22. On May 29, 1980, the Board of Review entered its order affirming the decision of the Director.

"23. Thereafter, on or about the 10th day of June, 1980, the applicant did appeal to the District Court of Shawnee County, Kansas, and all parties have submitted themselves to this Court's jurisdiction.

"24. Neither applicant nor applicant's spouse are officers, directors or employees of any manufacturer holding a license under the Kansas liquor laws.

"25. Applicant's spouse is a beneficiary of an irrevocable trust created by his father, which, among other assets, owns shares in Midwest Grain Processing Equipment Company, Inc.

"26. Midwest Grain Processing Equipment Company, Inc. does not hold any liquor license issued under the laws of the State of Kansas. Some of the stock owners of Midwest Solvents Company, Inc. are also stockholders of Midwest Grain Processing Equipment Company, Inc., but in neither instance do they individually own control of either company. Midwest Solvents Company, Inc. owns no stock in Midwest Grain Processing Equipment Company, Inc., nor does Midwest Grain Processing Equipment Company, Inc. own any stock in Midwest Solvents Company, Inc. Some of the directors of Midwest Solvents Company, Inc. are also directors of Midwest Grain Processing Equipment Company, Inc., but in neither instance do they in the aggregate constitute a majority of the board of either.

"27. The husband of applicant, as the beneficiary of an irrevocable trust created by his father, has only a minority interest in Midwest Grain Processing Equipment Company, Inc. and is not an officer, director, or employee of that company. The stock owned by the trust comprises two percent of the total outstanding stock of Midwest Grain Processing Equipment Company, Inc.

"28. Applicant's husband, Richard Cray, is related directly as son of Richard Cray, Jr. and nephew of Cloud L. Cray, Jr. The father and uncle own more than twenty-five percent of the stock in Midwest Solvents Company, Inc., a liquor manufacturer licensee under the laws of the State of Kansas."

In the district court six issues of law were submitted for determination. They are as follows:

(1) Is Midwest Grain Processing Equipment Company, Inc., under the laws of the State of Kansas, a subsidiary or affiliate of any corporation holding a manufacturer's license under the laws of the State of Kansas?

(2) Does the fact that Richard Cray, spouse of Mary Finholm Cray, is the named beneficiary of an irrevocable trust, terms of which specify that he is to receive certain shares of stock in Midwest Grain Processing Equipment Company, Inc. at age thirty, give him a direct or indirect interest in any corporation holding a manufacturer's liquor license under the laws of the State of Kansas?

(3) Is Mary Finholm Cray, as a matter of law, because of the circumstances of her spouse, as set forth in the stipulated facts, qualified to possess an alcoholic beverage distributor's license under K.S.A. 41-311 and 41-702?

(4) Alternatively, if so qualified, does the Director of Alcoholic Beverage Control have the broad discretion, regardless of the evidence, and/or with the benefit of his knowledge of the liquor industry which may be outside the evidence, to grant or deny an application based upon his own conclusions relating to the facts of the case?

(5) If question 4 is answered affirmatively, then is the order of the Alcoholic Beverage Control Board of Review dated May 29, 1980, upholding the director so arbitrary and capricious, and is the director's order of April 16, 1980, denying the application so arbitrary and capricious so as to abuse that discretion?

(6) Should the trial court, having made certain findings of law, have remanded the matter to the administrative tribunal for further proceedings consistent with the trial court's findings, inasmuch as it is the administrative officials who are empowered to issue the licenses and not the courts?

The determination of these issues required the district court to consider various provisions of the Kansas Liquor Control Act (K.S.A. 41-101 *et seq.*). Sections of the act provide, with great specificity, the classes of persons to whom different types of licenses shall not be issued and also prohibit certain acts and provide penalties to control the relationships between manufacturers, distributors, and retailers of alcoholic beverages.

At the outset, it may be stated that the parties approach the issues from two directions. The applicant, Mary Finholm Cray,

relies on the express language of the liquor control act to demonstrate that she is not barred by any specific statutory provisions. She thus claims that she is entitled to a distributor's license as a matter of law. The ABC director takes the position that the express statutory language is not controlling, and that he, as director, has a broad discretionary authority to deny a license in an appropriate case for reasons not specifically mentioned in the statutes. Simply stated, applicant contends that her application for a distributor's license is in full and complete compliance, not only with the letter but also with the spirit of the law, and as a consequence, she is entitled to have the same granted. In addition, the applicant contends that the ABC director's discretionary powers are not without limit and that the denial of her application constituted an abuse of discretion and a contravention of the specific statutory guidelines. The ABC director contends that, as a matter of law, the applicant is not entitled to have her application granted, because her husband, through his family connections, has an interest in a licensed alcoholic beverage manufacturer, contrary to the law as the director perceives it. The director also maintains that, whether or not the statutory requirements have been complied with, the director has the authority to deny application for a license under the circumstances of this case. It is these conflicting positions which must be kept in mind as we turn to consider the specific issues presented.

Before considering the specific issues, it would be helpful to review the statutory requirements and prohibitions relating to an alcoholic beverage distributor's license in Kansas. The basic requirements for a licensee are set forth in K.S.A. 41-311. Subsection (1) sets forth with great specificity the characteristics, traits and background of individuals who may not be issued any type of alcoholic beverage license. Generally speaking, these restrictions relate to citizenship, moral turpitude, etc. It is not contended that the issuance of a distributor's license to plaintiff would be in violation of any of the various paragraphs contained in this subsection, except that in paragraph (n) of K.S.A. 41-311(1) the Director is prohibited from issuing a license to any person if the spouse of such person would be ineligible to receive such a license for any reason other than citizenship and residence requirements. It is because of this proviso, and the plaintiff's marriage to her husband, that this matter is at issue.

Subsection (2) of K.S.A. 41-311 sets forth the restrictions and requirements which relate to a retailer's license and are not applicable to the determination of this appeal. It should be noted, however, that paragraph (c) of subsection (2) of K.S.A. 41-311 prohibits "[a] person who has beneficial interest in the manufacture, operation or wholesaling of alcoholic beverages" from being issued a retailer's license. No similar or comparable prohibition appears in subsection (4) of the statute setting forth the limitations on the issuance of a distributor's license.

Subsection (3) of K.S.A. 41-311 sets forth the restrictions and prohibitions applying to the issuance of a manufacturer's license. Since a manufacturer's license was not applied for by plaintiff, the provisions of the subsection are inapplicable except to the extent that they may offer assistance in the interpretation of other provisions of the statute. As an example, a manufacturer's license may not be issued to a corporation if an officer, manager, director, or stockholder owning more than twenty-five percent of the stock of the corporation would be ineligible to receive the license in his own right. Similar provisions do not exist in the case of an application for a distributor's license.

The applicable provisions of this statute to this appeal are found in subsection (4) of K.S.A. 41-311. There, the requirements for a distributor's license are set forth. In paragraph (a) of the subsection it is provided that if the applicant is a corporation, then all officers, all managers, all directors, and all stockholders must be eligible to receive a distributor's license in their own right. Paragraph (b) contains a similar provision relating to a distributor's license being issued to a partnership. Paragraph (c) requires ten-year residency immediately preceding the date of the application, which plaintiff has. A review of K.S.A. 41-311 indicates that plaintiff qualifies in all respects and regards with the requirements of that statute and that, likewise, her husband qualifies except on the question of residency which, under paragraph (n) of section (1) of the statute, is not required. K.S.A. 41-312 sets forth an additional restriction stating that a person who holds a retailer's license shall not be permitted to receive a distributor's license.

Section 7 of Chapter 41 contains prohibitions which restrict the right of manufacturers, distributors, and retailers in having any interest in the business of other types of licensees. K.S.A. 41-702

is devoted primarily to prohibitions against certain dealings with retailers by manufacturers and distributors. K.S.A. 41-703 prohibits a manufacturer or distributor from carrying on certain defined types of conduct with a licensed retailer and further prohibits manufacturers and distributors to have an interest in the ownership or operation of any *retail* business. The applicant is not alleged to have violated this section. The primary issue turns on the interpretation and application of K.S.A. 41-704 which provides as follows:

"41-704. **Manufacturers; interest in business of distributor prohibited.** No manufacturer of alcoholic liquors holding a manufacturer's license under this act and no manufacturer of alcoholic liquors outside of this state manufacturing alcoholic liquors for distribution and sale within this state, shall, directly or indirectly, as owner or part owner, or through a subsidiary or affiliate, or by any officer, director or employee thereof, or by stock ownership, interlocking directors, trusteeship, loan, mortgage or lien on any personal or real property, as guarantor, endorser or surety, be interested in the ownership, conduct, operation or management of any alcoholic liquor distributor holding an alcoholic liquor distributor's license under this act; nor shall any manufacturer of alcoholic liquors holding a manufacturer's license under this act nor any manufacturer of alcoholic liquors outside of this state manufacturing alcoholic liquors for distribution and sale within this state, be interested directly or indirectly, as lessor or lessee, as owner or part owner, or through a subsidiary or affiliate, or by any officer, director or employee thereof, or by stock ownership, interlocking directors or trusteeship in the premises upon which the place of business of an alcoholic liquor distributor holding an alcoholic liquor distributor's license under this act is located, established, conducted or operated in whole or in part."

It should be noted that K.S.A. 41-704 constitutes a prohibition against manufacturers having an interest in the business of a distributor as distinguished from a distributor having an interest in the business of a manufacturer. It is the applicant's contention that K.S.A. 41-704 does not apply to the direct or indirect ownership by a distributor of an interest in a manufacturer and that such an ownership is not prohibited unless the distributor owns more than twenty-five percent of the stock of the manufacturer, in which event it could be argued that, under the provisions of section (3) of K.S.A. 41-311, the distributor would be ineligible to hold a manufacturer's license and consequently an acquisition of an interest in the manufacturer of that percentage could not occur.

Considering all of the above statutes together, it is clear that, under the legislative scheme, totally different restrictions on ownership apply to the three tiers in the alcoholic distribution

system in this state. The greatest restrictions are placed upon the retailer who is prohibited from having a beneficial interest in the manufacture, preparation, or wholesaling of alcoholic beverages. Under K.S.A. 41-702, 41-703, and 41-704, a manufacturer is severely restricted in his dealing with retailers. A manufacturer is prohibited from having an interest in the ownership or operation of any alcoholic beverage distributor. Under the various sections, a manufacturer shares certain prohibitions with a distributor, but he does not share others. Like the manufacturer, a distributor may not have a beneficial interest in a retail establishment (K.S.A. 41-311[2][d]); nor lend furnishings or equipment to a retailer (K.S.A. 41-703[1]); nor pay for a retailer's license (K.S.A. 41-703[2]); nor loan money to a retailer (K.S.A. 41-703[3]); nor be interested in the ownership or operation of a retailer's business (K.S.A. 41-703[4]); nor be either lessor or lessee of a retailer (K.S.A. 41-703[5]); nor furnish interior decorations to a retailer (K.S.A. 41-703); nor pay for or lend money for the license of a retailer (K.S.A. 41-703).

We have carefully examined these various statutes and note that, under the legislative scheme, there is no prohibition of a distributor having an interest in the business of a manufacturer, so long as his interest is not sufficiently large to fall within the provisions of K.S.A. 41-311(3) relating to a twenty-five percent stock ownership in a manufacturer. To summarize the legislative provisions, although the legislature spoke with great specificity on certain prohibited relationships between retailers and either manufacturers or wholesalers, and with the same specificity on certain prohibited activities on the part of manufacturers in the business of retailers, it did not always specify and prohibit the same type of conduct on the part of a distributor. With these statutory provisions in mind, we now turn to a resolution of the specific issues presented in this case. It should be noted that the district court determined only the first two issues and decided the case on that basis holding, in effect, that the statutory provisions were controlling.

(1) Is Midwest Grain Processing Equipment Company, Inc., under the laws of the State of Kansas, a subsidiary or affiliate of any corporation holding a manufacturer's license under the laws of the State of Kansas?

The district court answered this question in the negative, and

we agree. Under the stipulated facts, the applicant's husband, Richard A. Cray, is indeed the beneficiary, contingent upon survival, of a trust created by his father, Richard Cray, in 1974. It has been stipulated that the trust has as its sole and only asset stock, comprising two percent of the total outstanding stock of Midwest Grain Processing Equipment Company, Inc. The equipment company was formed several years ago to acquire certain equipment which was owned by Atchison Hospital Association. The company leases the equipment to various companies including Midwest Solvents, an alcoholic beverage manufacturer. It is undisputed that the equipment company holds no liquor license of any type under the laws of Kansas. Although some of the stock owners of Midwest Solvents are also stockholders of the equipment company, they do not individually own control of either company. Midwest Solvents, the manufacturer, owns no stock in the equipment company, and the equipment company owns no interest in Midwest Solvents. While some of the directors of Midwest Solvents are also directors of the equipment company, in neither instance do they, in the aggregate, constitute a majority of the board of either company.

The trial court, in its memorandum opinion, noted that the ABC Review Board did not specifically find the equipment company to be an affiliate or subsidiary of Midwest Solvents. He noted that Black's Law Dictionary 80 (4th ed. rev. 1968) defines "affiliate" as "a condition of being united, being in close connection, allied, or attached as a member or branch." The same dictionary also states that "affiliation" between two organizations "includes an element of dependability upon which the organization can rely which, though not equivalent to membership duty, rests upon course of conduct that could not be abruptly ended without giving at least reasonable cause for charge of breach of good faith." The trial court also noted that Black's Law Dictionary 1596, defines a "subsidiary corporation" as "[o]ne in which another corporation owns at least a majority of the shares, and thus has control." The trial court considered the commonly accepted meanings of the terms "subsidiary" and "affiliate" and concluded that Midwest Grain Processing Equipment Company did not fall within either category.

In considering the relationship between corporate entities, each case must be decided upon its own special facts. *Kilpatrick*

*Bros., Inc. v. Poynter,* 205 Kan. 787, 473 P.2d 33 (1970). In *Intern. U., United Auto, etc. v. Cardwell Mfg. Co.,* 416 F. Supp. 1267, 1286 (D.Kan. 1976), the district court suggested the following factors which may be considered in determining the relationship between a parent corporation and a subsidiary: (1) The parent corporation owns all or a majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise caused its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary, but take direction from the parent corporation; (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. That case and the factors are cited in the opinion of the Court of Appeals in *Service Iron Foundry, Inc. v. M.A. Bell Co.,* 2 Kan. App. 2d 662, 674, 588 P.2d 463 (1978).

Under the stipulated facts, there is no showing sufficient to justify a finding that Midwest Grain Processing Equipment Company, Inc., was a subsidiary or affiliate of Midwest Solvents. The testimony, both before the director and the board, as well as the stipulations, clearly indicate that the equipment company is merely the lessor of equipment to Midwest Solvents, among others, and nothing more. We hold that the district court did not err in finding, as a matter of law, that the equipment company was not a "subsidiary" or "affiliate" of Midwest Solvents.

(2) Does the fact that Richard A. Cray, spouse of Mary Finholm Cray, is the named beneficiary of an irrevocable trust, the terms of which specify that he is to receive certain shares of stock in Midwest Grain Processing Equipment Company, Inc. at age thirty, give him a direct or indirect interest in any corporation holding a manufacturer's liquor license under the laws of the State of Kansas?

The district court answered this question in the negative in its memorandum opinion, pointing out that Richard A. Cray, as a contingent, non-vested beneficiary of a discretionary trust, has no present, legally enforceable rights in that trust, citing *Watts v. McKay*, 160 Kan. 377, 385, 162 P.2d 82 (1945), and *Jennings v. Murdock*, 220 Kan. 182, Syl. ¶ 8, 553 P.2d 846 (1976). We conclude that the trial court correctly answered this question in the negative.

(3) Is Mary Finholm Cray as a matter of law because of the circumstances of her spouse, as set forth in the stipulated facts, qualified to possess an alcoholic beverage distributor's license under K.S.A. 41-311 and 41-702?

The trial court did not specifically determine this issue but inferentially answered it in the affirmative. We have also concluded that the issue must be answered in favor of the position of the applicant. We have heretofore reviewed the various statutory provisions governing the qualifications and prohibitions relating to an alcoholic beverage distributor in this state. As noted above, the primary statutes for consideration are K.S.A. 41-311 and 41-702. Reading the various sections of the Kansas Liquor Control Act in their entirety, we have concluded that there is nothing in the statutory provisions which disqualifies Mary Finholm Cray from receiving an alcoholic beverage distributor's license. We recognize that, under K.S.A. 41-210, the legislature expressed its intent that the director of ABC be clothed with broad discretionary powers to govern the traffic in alcoholic liquors and to enforce strictly all of the provisions of the act in the interest of sanitation, purity of products, truthful representation and honest dealings in such manner as generally will promote the public health and welfare. However, we also must recognize that the legislature spoke with great specificity on those prohibitions relating to connections between manufacturers, distributors, and retailers. The legislature established the qualifications for applicants for various types of liquor licenses, and this court has the obligation to apply that legislation in accordance with the legislative intent.

We thus hold that the applicant, Mary Finholm Cray, is qualified to possess an alcoholic beverage distributor's license under the provisions of the Kansas Liquor Control Act, K.S.A. 41-101 *et seq.*

(4) Alternatively, if so qualified, does the director of the Alco-

holic Beverage Control have the broad discretion, regardless of the evidence, and/or with the benefit of his knowledge of the liquor industry which may be outside the evidence, to grant or deny an application based upon his own conclusions relating to the facts in the case?

The district court did not specifically answer this question. The ABC director urges us to answer this question in the affirmative. He points out the broad discretion vested in the director under K.S.A. 41-210 which is mentioned above. He argues that the purpose of the liquor control act was to completely separate the manufacture, wholesale distribution, and retail sale of alcoholic beverages and that which is directly prohibited cannot be done indirectly, citing *State, ex rel., v. Kansas Retail Liquor Dealers Foundation, Inc.,* 192 Kan. 293, 387 P.2d 171 (1963). He maintains that the power vested in the ABC director to grant liquor licenses carries with it, by implication, the power to refuse to grant a license in his discretion, so long as his discretion is not arbitrarily or capriciously exercised. The director maintains that there has been no showing of abuse of discretion in this case. The applicant takes the position that the legislative standards for the issuance of a license are mandatory and, where those standards are met, an applicant is entitled to a license. She cites K.S.A. 41-209(1) which provides that the director has the power "[t]o receive applications for, and to issue . . . licenses to . . . distributors . . . *in accordance with the provisions of this act."* (Emphasis supplied.)

The issue presented is not without difficulty. In many areas of regulation, the legislature has established rather broad, nonspecific standards for regulation and has vested the executive director of the agency with a corresponding broad discretion to enforce the statute. In other areas, the legislature has established specific legislative standards which bind the director of the agency and do not permit any discretion in departing from them. The Kansas cases have consistently held, whether in the case of administrative acts or in the case of the adoption of rules and regulations, that administrative agencies must act within the ambit of their specific statutory authority and not beyond. In *State, ex rel., v. Gillen,* 126 Kan. 368, 268 Pac. 94 (1928), the issue was whether the Kansas Board of Cosmetologists had the authority to require a period of six months of practice *in Kansas* before a license could

be issued without examination. The statute made no such requirement. The Supreme Court held that the board's requirement of six months' practice in the State of Kansas was ineffective, since it required a condition for the practice of cosmetology which had not been provided for by the legislature.

*Willcott v. Murphy,* 204 Kan. 640, 465 P.2d 959 (1970), involved the power of the director to adopt administrative rules and regulations under the Kansas Liquor Control Act (K.S.A. 41-101 *et seq.*). The issue in the case was whether the director of ABC had the discretionary power to prohibit the sale of *refrigerated* beer by a retailer. The director contended that the prohibition was within his broad discretionary power provided under the liquor control act. On appeal, the Supreme Court held that the director had acted beyond his powers, stating as follows:

"The power of an administrative agency to adopt rules and regulations is administrative in nature, not legislative, and to be valid administrative regulations must be within the authority conferred. An administrative regulation which goes beyond or conflicts with legislative authorization is void." Syl. ¶ 1.

For a similar holding, see *Marcotte Realty & Auction, Inc. v. Schumacher,* 225 Kan. 193, 589 P.2d 570 (1979), involving an attempt by the Kansas Real Estate Commission to enforce a regulation providing that all listing agreements for the sale of real estate must be in writing. It was held that the regulation was an invalid attempt by the real estate commission to regulate in an area which was beyond its power to regulate.

In *Kansas Commission on Civil Rights v. City of Topeka Street Department,* 212 Kan. 398, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973), it was held that regulations adopted by the Kansas Commission on Civil Rights must lie within its competence to make, and its regulations may not contravene or nullify controlling statutes. The opinion by Justice Fontron quotes the following language from *Harris v. Alcoholic Bev. etc. Appeals Bd.,* 228 Cal. App. 2d 1, 6, 39 Cal. Rptr. 192 (1964), where the California court said:

"In the absence of valid statutory authority, an administrative agency may not, under the guise of a regulation, substitute its judgment for that of the Legislature. It may not exercise its sublegislative powers to modify, alter or enlarge the provisions of the legislative act which is being administered."

It is interesting to note that *Harris* involved an attempt by the California Department of Alcoholic Beverage Control to refuse to

issue a retail liquor license to an applicant because of a violation of a regulation establishing a minimum of one-mile distance between a university and the premises proposed to be licensed. The court held that the administrative regulation was void because the administrative agency did not have the power to modify, alter, or enlarge the provisions of the statute. The order of priority with respect to jurisdiction in matters relating to intoxicating liquors was stated to be as follows: (1) the state constitution, (2) statutes, to the extent that they do not conflict with the constitution, and (3) rules and regulations of the department of alcoholic beverage control, to the extent that they do not conflict with the constitution or statutes.

In the case now before us, the applicant was fully qualified under all the statutory provisions to receive an alcoholic beverage distributor's license. Neither the applicant nor her husband had an interest in any corporation holding an alcoholic beverage manufacturer's license under the laws of the State of Kansas. Basically, it was the director's position that, even if the applicant complied with all the requirements of the statute, the director still had the discretion to deny her application for a license. We do not agree. In the area of liquor license applications, the provisions of the Kansas liquor control act discussed above are unusually specific. The legislature provided in K.S.A. 41-311(1)(*n*) that the director is prohibited from issuing a license to any person if the *spouse* of such person would be ineligible to receive such a license for any reason other than citizenship or residence requirements or age. There is nothing in the act which extends this disqualification to a proposed licensee if her father or uncle or if her spouse's father or uncle would be ineligible to receive such a license. If the legislature had wanted to prohibit such family relationships in the granting of a distributor's license, it could easily have done so. This the legislature did not do. We thus hold that, in view of the specific statutory provisions of the Kansas Liquor Control Act pertaining to the issuance of licenses to distributors, the director of ABC did not have the power by regulation to establish additional qualifications for or restrictions on applicants not specifically required by the statute itself.

In view of our holding on question 4, it is not necessary to answer question 5, and we turn to a consideration of question 6.

(6) Should the trial court, having made certain findings of law,

have remanded the matter to the administrative tribunal for further proceedings consistent with the trial court's findings, inasmuch as it is the administrative officials who are empowered to issue the licenses and not the courts?

On this issue, we hold that it was not necessary for the district court to remand the case to the ABC Board for further proceedings. K.S.A. 41-323, covering appeals to the district court from decisions of the ABC Board of Review, provides that an appeal shall be heard as an equity proceeding, and that the final decision made in the appeal shall be entered as a judgment as in other civil cases against the applicant or licensee or against the director, as the case may be. The legislature left little doubt that it fully contemplated and anticipated that a district court would render a judgment and enter such orders as the circumstances of the case warranted. We, therefore, hold that the district court had the power to enter judgment ordering the Director of the ABC to approve the plaintiff-applicant's application for an alcoholic beverage distributor's license.

For the reasons set forth above, the judgment of the district court is affirmed.